LUEHRMANN, Appellants, v. LACLEDE GAS LIGHT COMPANY, Respondent.

St. Louis Court of Appeals, October 22, 1907.

1. **PRACTICE: Demurrer to Evidence.** In determining whether a demurrer to plaintiff's evidence was properly sustained by the trial court the most favorable construction of which it will admit must be given to such evidence and every reasonable inference therefrom drawn in plaintiff's favor.

2. **ELECTRICITY: Negligence: Duty of Insulation.** Thorough insulation being indispensable to confine electric currents to the wires, it is the duty of an electric lighting company to keep its wires insulated and that duty is a continuing one requiring careful and continuous inspection.

3. ———: ———: ———. Where a portion of the insulation on an electric light wire about an inch in length was worn off at a place where it could plainly be seen by inspection and where it

was shown to have been in that condition for a considerable length of time, this was sufficient evidence to justify a finding that the lighting company whose wire it was, was negligent in maintaining an unsafe wire.

4. ————: ————: **Proximate Cause.** Where the insulation was worn off for about an inch on an electric light wire and allowed to remain in that condition by the negligence of the electric light company, and where some boys threw some wires across the exposed place so that the current was communicated to this wire and seriously injured a person coming in contact with it, the proximate cause of the injury was the unlawful act of the boys in tampering with the wire, and not the negligence of the company in allowing the wire to become exposed.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*William L. Bohnenkamp* for appellant.

(1)   That this proof makes out a prima-facie case and that the doctrine of *res ipsa loquitur* applies is well settled by the authorities of this State and other States. Gannon v. Gas Company, 145 Mo. 502; Geismann v. Electric Co., 173 Mo. 654; Overall v. Electric Light Co., 47 S. W. 442; McLaughlin v. Electric Light Co., 100 Ky. 173; Clement v. Electric Light Co., 44 La. Ann. 692, and other cases cited therein. But in this case it is not necessary to rely upon the doctrine *res ipsa loquitur.* There was direct proof of negligence in that it shows that the insulation was off, and thereby exposing the charged wire. Griffin v. Elec. Light Co., 164 Mass. 492; Schultz v. Gas Co., 82 Minn. 100. (2)   Electricity is one of the most dangerous agencies ever discovered by human science, and, owing to that fact it was the duty of the electric light company to use every protection which was accessible to insulate its wires at all points where people have the right to go for business or pleasure and to use the utmost care to keep them so, and for personal injuries resulting from its failure in

that regard it is liable in damages. Light & Power Co. v. Gardner, 78 Fed. 74; Illingsworth v. Elec. Light Co., 161 Mass. 583; Ennis v. Gay, 87 Hun 355; Penham v. Portland El. Co., 33 Ore. 451; Girardi v. El. Imp. Co., 107 Cal. 120; Haynes v. Gas Co., 114 N. C. 203. (3) And a defendant so using such electric wires and failing to exercise such care will not be excused by the fact that the injury, in its manner of occurrence, could not reasonably have been anticipated. It is sufficient that the injury is the natural result of some act or omission of the defendant's, which the defendant could reasonably anticipate would probably cause some injury. Harris v. Electric Light Co., 195 Mo. 606; Hoepper v. Hotel Co., 142 Mo. 378; Miller v. Railroad, 90 Mo. 394; Graney v. Railroad, 140 Mo. 98; Smith v. Railroad, L. R. 6 C., 20; City of Dixon v. Scott, 181 Ill. 116; 21 Am. and Eng. Ency. Law (2 Ed.), 488.

*Percy Werner* for respondent.

This is a case for the application of the maxim *causa proxima non remota spectatur.* Cole v. Savings & Loan Soc., 124 Fed. 113, and authorities there cited. Foley v. McMahon, 114 Mo. App. 442.

BLAND, P. J.—The Hugo Dry Goods Company has a three-story building on the northwest corner of Twenty-third street and Cass avenue, in the city of St. Louis. The building fronts on Cass avenue and runs back north on Twenty-third street to an alley. The first floor of the building is occupied by the company as a store. The second and third floors are used for residence purposes and are constructed to front on Twenty-third street. A wooden porch forty-five feet long runs along the east side of the building for the benefit of tenants occupying the second and third floors. In the back yard of the premises are coal sheds ten to fourteen feet high. Defendant maintains a line of electric wires strung on

poles about twenty-five feet high, in the alley running
on the north side of the premises. The poles are much
higher than the coal sheds. For the purpose of furnish-
ing the Hugo Dry Goods Company electric light, defend-
ant strung a wire from one of its poles in the alley, over
the coal sheds to a corner of the porch, thence along the
porch and down to the first floor. This wire inclined
downward from the pole to the porch but was from
five to six feet above the top of the sheds. For sometime
prior to May 4, 1905, about an inch of the covering or
insulation of the wire near where it was fastened to the
corner of the porch had been off, leaving the wire ex-
posed. From what cause or by what means the insul-
ation was removed, the evidence does not show. On
said date two boys were seen on top of the coal sheds
playing with baled hay wire, the end of which had been
bent and thrown over the electric wire. Some of the
witnesses say the boys were trying to get it off the elec-
tric wire. In manipulating the wire it was caused to
slide toward the porch; when it was near the porch the
boys went to a nearby stable and got a bunch of tangled
baled hay wire and in some manner connected it with the
down wire and pushing it along the electric wire until
it reached the spot where the insulation was off. At
this juncture the bunch of wires were in a pool of water
that had collected in the alley from a recent rain and the
wires began to sputter and emit sparks of electricity,
whereupon the boys ran away. In a few minutes there-
after plaintiff drove a milk wagon into the alley to make
a delivery of milk. He did not observe the wires and
his horse stepped into them and instantly fell to the
ground and was electrocuted in a few minutes. When
the horse fell plaintiff leaned over the side of his wagon
to see what caused him to fall, and was thrown from the
wagon by the force of an electric current into the alley,
where he received several other electric shocks from
coming in contact with the horses's feet as he kicked in

his death struggles. Plaintiff was picked up and helped to a drug store. The action is to recover damages caused by the electric shocks. The negligence alleged is that defendant maintains its wires in a careless and negligent condition and negligently failed to properly insulate them and negligently failed to keep them insulated prior to and on the day of the accident (May 4, 1905).

At the close of plaintiff's case the court gave an instruction in the nature of a demurrer to his evidence, whereupon plaintiff took a nonsuit with leave to move to set the same aside. The motion to set aside the nonsuit was overruled and he appealed to this court. The question presented for review is whether or no plaintiff made out a prima-facie case. In the consideration of this question the most favorable construction that it will admit of must be given to plaintiff's evidence and every reasonable inference therefrom in his favor be drawn. It is in evidence that a short time before the accident, defendant's servants were at the premises reinsulating the wires leading along and down from the porch. On this evidence and on the evidence that the uninsulated portion of the wire was very near the porch and was plainly to be seen, the inference should be drawn that if defendant's servants saw or would have seen, if they had exercised ordinary care, that the insulation was off the wire and did not see it, or seeing it failed to reinsulate it, they were negligent. Notice of the unsafe condition of the wire may also be imputed to defendant on the evidence that it had been in that condition for a considerable length of time. Thorough insulation is indispensable to confine the electric current to wire, and hence the duty of defendant to insulate and keep its wires insulated was a continuing one and required careful and continuous inspection. [Geismann v. Missouri-Edison Electric Co., 173 Mo. 678, 73 S. W. 654; Winkelman v. Electric Light Co., 110 Mo. App. 184, 85 S. W. 99.] We think, therefore, that on the evidence with re-

spect to the condition of the wire, the jury would have been justified in finding defendant was negligent in maintaining an unsafe wire. But the mere negligence of defendant in maintaining an unsafe wire is not alone sufficient to entitle plaintiff to recover. It is essential to plaintiff's cause of action that he show the negligence complained of was the proximate cause of his injury. Lexicographers, text-writers and courts have repeatedly undertaken to define proximate cause. The definitions given by them are of but little help in the application of the doctrine to the particular facts in a given case unless the facts fall precisely within those of the case where the definition has been applied. No case has been cited where the facts are on all fours with the facts of the case in hand. Plaintiff, however, contends they are not distinguishable from the facts in the case of Harrison v. Kansas City Electric Light Company, 195 Mo. 606, 93 S. W. 951. In the Harrison case defendant maintained, in Kansas City, Mo., a circuit of wires strung on poles known as circuit No. 32, which was only operated at nighttime. The insulation had been worn off the wire by the limbs of a tree in deceased's yard reaching over the wire and rubbing against it when the wind blew. Deceased's son, a youth, on the day of the accident connected a copper wire to defendant's wire where the insulation was removed and wrapped the copper wire around the tree. At the time a swing of cable wire was swung to one of the limbs of the tree. One of the cables was too long and was wrapped about the tree. In the afternoon of the day of the accident, the line was reported to the company to be "in trouble" and a lineman was sent out to discover and remove the difficulty. He failed to discover the down wire the boy had attached; but reported the line "O. K." to the company, after which the current was turned on at about 7:25 p. m. After the current was turned on the boy discovered the tree around which he had wrapped the wire was burning, and got an ax and

chopped the wire in two, leaving it swinging in the air about four feet above the ground. His father stepped out of the house a few minutes later and took hold of the swing and was instantly killed by the electric current making a short circuit by means of the cable wire, etc. It was contended that the negligence of defendant's lineman in reporting the line "O. K." was not the proximate cause of the injury. After reviewing several of the Missouri cases at pages 623-4-5, MARSHALL, J., writing the opinion, at pages 627-8, said:

"The negligence of the lineman was the negligence of the defendant, and if he failed to report the fact that he had not discovered and remedied the trouble, his failure is imputable to the defendant. Under the circumstances, there is no escape from the conclusion that the defendant was negligent in turning on the current of electricity after it knew there was trouble, without making a test at the main office to discover the true state of affairs and without positively knowing that the trouble had been remedied. The fact that its negligence would not have resulted in the injury complained of except for the independent intervening negligence of the son of the deceased, does not relieve the defendant from liability, for the act of the son of the deceased could not have produced the injury unless the defendant had turned on the current of electricity, nor unless there had also been a second ground somewhere else. The defendant's negligence was, therefore, a direct and proximate cause, or one of the direct and proximate causes which concurred with the act of the son of the deceased to produce the injury, and, under the rule in this State, the defendant is liable." This case and some of the cases cited in the opinion of the learned judge seem to oppose the general rule that the proximate cause is one from which a man of ordinary experience and sagacity could foresee or contemplate the result which followed might probably follow. [American Express Co., v. Risley, 179 Ill. 295;

Railway v. Byrne, 100 F 3d. 1. c. 363; Railway v. Kellogg, 94 U. S. 469; Railroad v. Woolley, 77 Miss. 1. c. 943; Enochs v. Railway, 145 Ind. 1. c. 637; 16 Am. and Eng. Ency. of Law, p. 436.] If defendant's line had been reported or discovered to be "in trouble" and it had sent a "trouble man" out to discover and remedy the difficulty, and he had failed to discover the wire which was hooked over defendant's wire, and reported the line "O. K." and defendant had then turned on the electric current and the injury complained of resulted, the case would be on all fours with the Harrison case. But defendant's line was not in trouble until the baled hay wire was pushed along its wire to the point where the insulation was off, and this was not done until a few moments before the accident; and it seems to us to hold the defendant liable we must hold it was responsible for the act of the trespassing boys. To do this would practically make defendant an insurer of the lives and limbs of every person against loss or injury caused by the wrongful and unlawful tampering with its wires by any and all persons whomsoever. Our Supreme Court has not gone so far and we will not take the step of our own volition. We think the demurrer to the evidence was properly given, and affirm the judgment. All concur.