No. 19,490.

FRED LITSCH, *Appellee*, V. THE KANSAS GAS & ELECTRIC
COMPANY, and THE PETROLEUM PRODUCTS COMPANY,
*Appellants*.

SYLLABUS BY THE COURT.

1. ELECTRICITY—*Personal Injuries—Rules of Practice.* The rule
that allegations and evidence stating and supporting a cause
of action should not be held insufficient on demurrers and ob-
jections to testimony—followed.

2. SAME—*No Prejudicial Error in Refusing Instructions.* One
of the defendants was the plaintiff's employer and used the
electricity furnished by the other defendant conveyed by wires
alleged to have been negligently left without proper insulation,
resulting in plaintiff's injury. The vital points of law involved
applicable to each of the three parties were substantially cor-
rect as given by the trial court—certain slight inaccuracies
being cured by clear statements in other parts of the charge,
so that taken as a whole the instructions were full, sufficiently
accurate, and fair to all parties. *Held*, that it was not preju-
dicial error to refuse others requested or to give those which
were submitted to the jury.

3. SAME—*Statement of Facts—Instruction Refused—No Error.*
The injury occurred while the plaintiff was attempting to put
in place on the roof of a certain building a galvanized-iron
smokestack, on one side of which building, ten feet from the
eaves, was a runway leading to another building, on which
runway a ladder was placed by which to mount the roof, the
eaves being about twenty-six and one-half feet from the ground.
The wires in question were strung about two feet above the
comb of the roof. The aperture through which the smoke-
stack was to project above the roof was on the side opposite
the runway. One witness testified that there was nothing to
prevent a scaffold being placed on the other side of the building
or to prevent one placing a pipe from using that side of the
roof. The jury found that the plaintiff was not in charge of
the construction of the building and that he was not warned of
the danger of the wires. The evidence indicated that the
injury occurred by the smokestack coming in contact with the
wires while the plaintiff was attempting to get it in position
and to put it in place. The aperture was five feet from the
opposite eave of the roof. The court refused an instruction

Litsch v. Electric Co.

that if the plaintiff was foreman or in charge of the construction of the building and had been warned of the high voltage of the wires and could have avoided coming in contact with them by a ladder or scaffolding he could not recover. *Held,* not error.

4. SAME—*Refusal to Submit Special Question—No Error.* The refusal to submit a question whether the plaintiff would have avoided the injury if he had used a ladder or scaffold on the other side of the building was not material error, for the reason that from the evidence an intelligent answer could hardly have been given, and a mere conjecture would have been improper and without value.

5. SAME—*Assumption of Risk—Contributory Negligence.* It is not fatal to a recovery that the plaintiff used the more dangerous of the two methods open to him for doing the work in hand unless the dangers of the method adopted were so manifest that a prudent person would not have made such choice.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed May 8, 1915. Affirmed.

*Thomas E. Wagstaff,* of Independence, *W. E. Ziegler,* of Coffeyville, *H. L. McCune,* of Kansas City, Mo., and *D. T. Mason,* of St. Louis, Mo., for appellant The Kansas Gas & Electric Company.

*G. T. Stanford, T. H. Stanford,* both of Independence, and *O. C. Mosman,* of Kansas City, Mo., for appellant The Petroleum Products Company.

*S. H. Piper,* of Independence, and *George M. Morris,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff recovered a judgment for $15,000 against The Kansas Gas & Electric Company and The Petroleum Products Company for damages alleged to have been caused by a shock from wires negligently left by the defendants in a dangerous condition. Both defendants appeal. The charge in substance was that the products company owned and operated an oil

32—95 KAN.

refinery in Independence, and employed electricity both for power and for light, purchasing the same from the electric company from its plant in the city of Independence, which electricity was conveyed to the premises and buildings of the products company by means of poles and wires and appliances owned, controlled and maintained by the electric company; that the plaintiff was employed by the products company as a carpenter and laborer upon a building in process of construction known as the bone-burner building; that the products company ordered and directed the electric company to string its wires over the roof of such building, which was done in a careless and negligent manner, and such wires were allowed to remain in such position as was dangerous to persons and to plaintiff at such times as they might be required to go upon the roof of such building to work; that the products company carelessly and negligently failed and omitted to make or cause to be made proper inspection of the wires, wrappings and appliances so erected upon and above the roof of such building, which inspection would have prevented the injury complained of, and negligently omitted to warn the plaintiff of the defective and unsafe condition of such wires; that the electric company carelessly and negligently permitted its wires to be so dangerously and defectively constructed and to remain so; that such wires were charged with and carried a high and dangerous current of electricity unknown to the plaintiff; that being directed to go upon the roof of the bone-burner building to put in place a certain galvanized-iron smokestack, the plaintiff and his helper went upon the roof of such building, which was a two-story building with sides and roof of corrugated iron, the distance from the ground to the eaves being twenty-six and one-half feet and from the eaves to the comb of the roof about fifteen feet; that three of the electric wires in question had been strung about three feet above the comb of the roof; that the plaintiff was upon

the comb of the roof attempting to place the smoke-
stack in position, when it came in contact with the
electric wire or wires which had been allowed to be-
come in a dangerous and unsafe condition in that the
insulation at or near their point of connection was
faulty and unfit for the purposes of insulation. The
wires carried a dangerous electric curent, not having
been properly wrapped, so that the wrappings had
spread and become unwrapped, thus leaving the wires
so that when the smokestack came in contact therewith
the electric current passed into and through the plain-
tiff's body, from which he received a shock rendering
him unconscious, causing him to fall to the ground be-
low, by which he received grave and serious permanent
injuries. The answers consisted of general denials and
pleas of contributory negligence and assumption of risk.

The first three errors assigned are overruling mo-
tions for judgment on the opening statement and plead-
ings, overruling objections to evidence under the pe-
tition, and overruling demurrers to the plaintiff's evi-
dence. It is argued that as the plaintiff was at work
upon the building as it progressed it was not the duty
of the builder to provide him a reasonably safe place to
work in the ordinary acceptance of that term; that the
plaintiff must have known of the dangerous nature of
the electric wires placed where those in controversy
were, and that under the circumstances he assumed the
risk. It is urged that by stringing the wires two feet
above the comb of the roof all fault was eliminated as
no one would suppose an injury could occur there. But
the building was in process of construction, and it was
manifestly necessary for workmen to be in proximity
to these wires until the completion of the building in-
cluding the placing of the smokestack, and this condi-
tion of things carried its corresponding need for care
in locating, insulating and inspecting the wires, charged
as they were with so heavy a voltage of electricity.
Counsel suggest that the dangers of the plaintiff's em-

ployment were open and obvious and should have been avoided rather than disregarded by him. His own testimony was to the effect that he had no knowledge or warning of the high voltage or condition of the wires.

"I did n't know anything about the wire carrying high voltage of electricity or that it might give a person a shock if he touched it. . . . When I was working there I supposed it would be safe when they were put up there. . . . Mr. Shermer did not at any time say anything to me about the wires carrying current. Never warned me to be careful at no time or place. No employee of the electric company ever said anything about the wires carrying a current and never warned me about it. Never heard it discussed by anybody."

There was evidence of several witnesses that warnings were given, but it was for the jury to glean the truth from the entire testimony produced and it appears that they gave credence to plaintiff's version of this matter, that neither of the defendants gave any warning of danger in coming in contact with the wires above the building. It follows that the assignments of error thus far considered are without merit, and it may be observed that some of these alleged rulings do not appear from the abstract to have been made.

The electric company complains of the refusal of an instruction requested by it that those who have notice of the dangerous condition of a wire or other electric appliances and voluntarily bring themselves in contact with it can not hold the electric company for resulting injuries. Another requested by the same defendant was in substance that if the plaintiff knew of the high voltage of the wires and the consequent danger and could have avoided such danger by attempting to place the smokestack by means of a ladder or by scaffolding on the north side of the building he was precluded from recovery against the electric company. Still another to the effect that if after being warned of the high voltage and danger of the wires the plaintiff, being foreman or

in charge of the building, attempted to cross the comb, instead of attempting to place the smokestack by a course which would not have brought him in the vicinity of the wires, he could not recover as against the electric company, was refused, which refusal is assigned as error.   The findings of the jury were that the plaintiff did not have charge of the construction of the building and that he was not warned.   There was no evidence that the smokestack could have been put in place without bringing the plaintiff in the vicinity of the wires. The only testimony directly on this point was that of Mr. Murrow who stated that the pipe hole was five feet from the eaves of the roof, and that there was nothing in the construction of the roof to prevent a scaffold being erected there, and nothing to prevent any one placing a pipe from using that side of the roof.   This, however, does not show that in attempting to place the pipe by mounting that side of the roof the pipe might not have come in contact with the wires as it did, or in some similar way causing a similar injury.   There was a runway from the bone-burner building to the filter house, on which runway about ten feet from the eaves of the roof the ladder was placed.   But had these instructions been given they could not have benefited the party requesting them in view of the findings as to knowledge, warning and charge of the work, hence their refusal worked no substantial prejudice and the error, if any, was immaterial.

The products company complains of the refusal to give instructions requested by it to the effect that if the plaintiff's fall was caused by receiving an electric shock this defendant would not be liable unless it knew of the faulty insulation on the roof or by the exercise of ordinary care on its part would have known thereof. Also that if the plaintiff had equal means or opportunity of knowing of the condition that the products company had, and if he knew or ought to have known of the danger and continued to work, then he assumed the

risk. The charge given by the court and the findings of the jury leave no room for complaint as to refusal of these instructions. The same may be said concerning another instruction requested by the products company and refused touching presumptive knowledge of the plaintiff as to the condition and danger of the wires in question and relating to the question of contributory negligence which is fairly and fully covered by the instructions given. The same defendant criticises another instruction because it spoke of the public instead of the plaintiff, and because of the expression that the company which "uses" such dangerous agent is bound not only to know the extent of the danger but to use the very highest degree of care practicable to avoid injury, and that it is not only the duty of the company furnishing and distributing electricity to make its wires safe by proper insulation but to continue to maintain them in such condition. Under the facts as shown by the evidence and found by the jury no error is apparent in the use of the word "public" instead of the word "plaintiff." The criticism, however, is leveled chiefly at that portion of the instruction to the effect that the company which "uses" such dangerous agent is bound to know the danger and use the highest degree of care to avoid injury, as not applicable to the products company but only to the electric company, and it is asserted that the former as regards its employees was required to use only reasonable and ordinary care to see that the wires of the electric company were properly insulated and reasonably safe, and instruction No. 6 given by the court to this precise effect is referred to as proof that the instruction complained of was erroneous and prejudicial. The court in instruction No. 14 expressly charged that unless the products company had actual notice of the defect or improper insulation, or by due care commensurate with the circumstances could have known of such fact, it was not liable. The closing language of the instruction in question was as follows:

Litsch v. Electric Co.

"It is not only the duty of a company furnishing and distributing electricity to make its wires safe by proper insulation, but to continue to maintain them in such condition." This is criticised as casting on the user or consumer a burden equal to that of the generator and furnisher of electricity. But the words do not carry such meaning, for the mere user can not be a furnisher and distributor. By this and the sixth instruction the rights of the products company in this respect were fully protected.

Instructions Nos. 7, 9 and 17 are complained of because each contains the expression "if the products company directed the plaintiff to go over and upon the roof to place the smokestack in position," and it is asserted that there is no evidence whatever that any such direction was given. The plaintiff, however, testified that the superintendent came to him and told him to place the smokestack that the teamster had brought on the bone-burner building. How it could have been placed on the top of the building without going upon the roof is not clear, and it is fair to conclude that a direction to place it in position involved and implied a direction to go upon the roof for that purpose, because of the fact that a place had been left in the roof for the setting of the smokestack.

Instruction No. 10 is urged as essentially erroneous because it used the word "defendants" in charging as to assumption of risk. It is pointed out that as the electric company was not an employer of the plaintiff it could not plead his assumption of risk as to itself (its allegation in this respect being that he assumed the risk by reason of his employment by the products company), and that it was very prejudicial to the electric company to have this mistake made of including both defendants under the charge as to the assumption of risk. But a careful examination of this instruction fails to reveal how it could have worked harm to the products company, for as to this defendant the charge

was certainly as favorable as it deserved, and the error in including the electric company was, in view of all the instructions given, not substantial, and hence not material.

The electric company complains of the court's refusal to submit the question, "Would plaintiff have avoided injury while attempting to place the metal smokestack in position if he had used a ladder or scaffold on the north side of the bone-burner building?" As already suggested, the evidence on this point was so meager that an intelligent answer could hardly have been given to the question if submitted, and a mere conjecture would have been improper and without value. (*A. T. & S. F. Rld. Co. v. Lannigan,* 56 Kan. 109, 117, 42 Pac. 343.) Moreover, it is not fatal to a recovery that the plaintiff used the more dangerous of the two methods open to him for doing the work in hand, unless the dangers of the method adopted were so manifest that no prudent person would have made such choice. (*Brinkmeier v. Railway Co.,* 69 Kan. 738, 745, 77 Pac. 586; *Railroad Co. v. Morris,* 76 Kan. 836, 845, 93 Pac. 153; *Delmore v. Flooring Co.,* 90 Kan. 29, 32, 133 Pac. 151.)

In discussing the refusal to grant a new trial it is argued that in the charge given by the court proximate cause was not sufficiently explained, the claimed knowledge and carelessness of the plaintiff are recounted, and the amount of the verdict is said to be excessive, also the matter of warning and the manner of the injury are emphasized.

The case is by no means one-sided or free from wide divergencies in the evidence, and there is ground to argue as the defendants do concerning its weight and credibility. But the instructions, taken together, were substantially correct and fair, fully covering all the vital points in the case for each party. The jury settled the facts in favor of the plaintiff. His injury was so lamentable and severe that a mere statement thereof would be painful.

Fifteen special questions were so answered and so sustained by the evidence that, in view of the defective condition in which the wires were left, as detailed by the men who went through the form of insulating them, the general verdict can not be disturbed.

The judgment is affirmed.