No. 20,196.

ANTONIA SNYDER, *Appellee*, v. THE LEAVENWORTH LIGHT,
HEAT AND POWER COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

NEGLIGENCE—*Electric Company—Uninsulated Wires—Children Play-
ing—Contact—Injuries.*   An electric company built and maintained
a system of high-voltage wires about thirty feet above the ground
along the street in a thickly populated portion of a city.  When built,
the wires were properly⸳ insulated as the law requires, but the in-
sulation had rotted so that the wires had been nearly bare for a
number of years.  A small wire with a stone attached had been thrown
over the uninsulated wires of the company, and supposed to have
been done by boys at play, but the evidence did not show by whom,
how, or when the wire was thrown over those of the company.  A
boy sitting upon a coping upon the side of the street who had the
small wire in his hand fell over, and a neighbor noticing that he did
not move and that his clothes were on fire called for help.  The plain-
tiff hearing the call hurried to the aid of the boy who was already
dead, and upon touching him, she received an electric shock causing
severe burns and other injuries.  In an action brought by her, it was
found that the destructive current escaped from the wires of the
electric company through its negligence, that the plaintiff was in-
jured when she went to the aid of the boy, as she had a right to do,
and it is held that the jury was warranted in finding that the throw-
ing of the wire over the uninsulated wire was an act to be anticipated
by the company, and against which it should have provided, that the
negligence of the company was the proximate cause of the injury,
and that under the evidence the plaintiff was entitled to recover for
the injuries sustained by her.

Appeal from Leavenworth district court; JAMES H. WEN-
DORFF, judge.  Opinion filed May 6, 1916.  Affirmed.

*Floyd E. Harper*, of Leavenworth, for the appellant.

*William W. Hooper*, and *Lee Bond*, both of Leavenworth,
for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:  On the evening of the 3d day of July,
1913, a fifteen-year old boy was seen sitting upon the stone
coping along the front of the plaintiff's yard, and one of the
plaintiff's neighbors noticed that he did not move, and observ-

ing that his clothes were on fire, she called for help. The plaintiff hearing her call, rushed out into her yard to aid the boy, who was already dead, and when she touched him she received a severe electric shock, causing burns and other injuries on account of which she brought this action. Along the side of the street in front of the plaintiff's house, and about twelve feet from the coping upon which the boy was sitting, the defendant company maintained its lines of electric wires—one set of wires at the top of a pole about thirty feet above the ground, which carried a current of 2300 volts for lighting houses, and another wire about three feet below the others which carried the current for the city arc lights. After the accident a small wire insulated with silk was found lying upon and over the company's wires and hanging down to the ground not far from the boy, and it was evident that he had met his death from a current of electricity conducted to him by this wire from the wires above. A small rock was tied at one end of the wire, but no witness had seen any one throw the rock over the company's wires, and it was not shown how or when the small wire had been placed in that position. The company's wires had been strung about thirteen years, and during the years the insulation had gradually rotted until in many places the wires were left bare. Much evidence was introduced as to the proper kind of insulation to be used for outdoor wiring such as this. The defendant's wires had originally been insulated with what is known as weather-proof insulation, which is composed of several thicknesses of braided cotton saturated with asphaltum or some similar insulating solution, and most of the testimony was that this was the kind ordinarily used for outdoor wiring since it resists the action of the weather better than rubber-covered wire. The latter kind has a layer of rubber with cloth insulation material on the outside and is the better insulator of the two when new, but is not adapted to outdoor work as it deteriorates rapidly, due to the rubber hardening and cracking. It appears from the testimony, however, that if the defendant's wires had been covered with the kind of insulation used ordinarily for outdoor wiring, instead of having bare places where the insulation had fallen off, there would have been little possibility of a person being injured by coming in contact with the small wire placed as it was upon the company's wires.

Snyder v. Light Co.

The plaintiff secured judgment for $4000 and the defendant appeals, and insists that even if the wires were not properly insulated the lack of insulation was not the proximate cause of the injury, and also contends that the company was not responsible for the injury, because the circumstances giving rise to the accident were not such as could have reasonably been foreseen by it. Complaint is also made of the court's instructions, particularly with reference to the degree of care which the defendant was bound to exercise in maintaining its line, and also of the refusal to grant a new trial on the ground of newly discovered evidence.

Although the principal contention of the defendant is based on a challenge of the evidence, there is but little conflict in it. It was the acknowledged duty of the defendant to insulate its wires. They were not insulated at the place of contact and had been unprotected for several years before the plaintiff was injured by the escaping current. It appears that the plaintiff was upon her own premises, where she had a right to be, and no one would attribute fault to her for going to the aid of the boy whose clothing was on fire. The current escaped from the control of the defendant through its neglect. It is clear that if the defendant's wires had been properly insulated the plaintiff would not have been injured. Notwithstanding the existence of these facts, the defendant contends that the injury was not the result of its negligence, as it had nothing to do with throwing the small wire over its own wires and had no knowledge that it had been brought into contact with its wires. It is insisted that the proximate cause of the injury was not the unprotected wires, but that it resulted from the interference of meddling boys whose acts in throwing the small wire over the defendant's wires could not reasonably have been forseen by it.

Attention is called to *Green, Appellant, v. West Penn. Rys. Co.*, 246 Pa. St. 340, 92 Atl. 341, L. R. A. 1915 C, 151, where boys found a spool of fine wire and after having attached a stone to one end of it, threw it over an uninsulated feed wire of the railway company which carried a heavy current of electricity, and left it hanging close to the ground. Another boy, who had been told that he could have the hanging wire, took hold of it and was fearfully burned and crippled for life. The court assumed that the company was negligent in not protect-

ing its own wire by insulation, and stated that the company was bound to know that children are apt to play with wire and to expose themselves to danger incident to such wires, and should provide against it; but after taking these positions, decided that the company was not required to safeguard its wires from such a contact and occurrence as happened there, as it could not have forseen that boys might throw wires over its own.

The court of appeals of Missouri ruled that an electric light company which had negligently maintained uninsulated wires over which boys had thrown a wire that was subsequently touched by a traveler who was severely injured was not responsible for the injury and this holding was upon the theory that although the company was negligent in turning loose a deadly current, the act of the boys in throwing the wire over its own could not have been foreseen and that it was their act rather than the act of the company which was the proximate cause of the injury. (*Luehrmann v. Gas Light Co.*, 127 Mo., App. 213, 104 S. W. 1128.) Other cases supporting the contention of the defendant are *Brubaker v. Electric Light Co.*, 130 Mo. App. 439, 110 S. W. 12; *Kempf v. Spokane & Inland Empire R. Co.*, 82 Wash. 263, 144 Pac. 77, L. R. A. 1915 C, 405.

It is conceded that a party who conducts so powerful and destructive an agency through the streets of a thickly populated part of a city is bound to exercise a degree of care commensurate with the dangerous character of the agency to protect those who may come in contact or even in close proximity with its wires. The highest care and utmost caution should be exercised for the safety of the public, including those engaged in business or play, and for the protection of thoughtless, curious and inexperienced children, as well as those who have reached maturity. (*Electric-light Co. v. Healey*, 65 Kan. 798, 70 Pac. 884; *Railway Co. v. Gilbert*, 70 Kan. 261, 78 Pac. 807; *Winegarner v. Edison*, 83 Kan. 67, 109 Pac. 778; *Wade v. Electric Co.*, 94 Kan. 462, 147 Pac. 63; *Litsch v. Electric Co.*, 95 Kan. 496, 148 Pac. 632; *Harrison v. Kansas City Electric Light Co.*, 195 Mo. 606, 93 S. W. 951, 7 L. R. A., n. s., 293.) To secure protection as against electric wires of dangerous voltage, it is essential that they should not only be safely placed but should be carefully covered with insulation to prevent the escape of

the destructive current. Even ordinary care requires that the current should be confined, and, besides, the ordinance of the city granting the defendant the privilege of stringing its wires along the streets of Leavenworth provided that it should use every reasonable protection to avoid danger or injury to others. The defendant's wires were insulated when the line was first constructed and were safe as against casualties such as befell the plaintiff, but the defendant failed to maintain these wires in that condition. It was a continuing duty of the defendant to keep its wires insulated, but it appears that the insulation had been broken and the wires had been partly bare for a long time. The defendant, therefore, must have known that the wires were uncovered, and the electric current unconfined at the place in question. As a result of its negligence in turning loose the deadly current in a busy section of the city, the plaintiff, to whom no fault can be attributed, was injured. Notwithstanding its acknowledged negligence and the resulting injury, defendant insisted that it should not be held responsible for the injury, as the placing of another wire in contact with its wires was something which it was not obliged to anticipate, and against which it was under no duty to guard. We can not agree with this view. The highest care and utmost caution imposed by the law upon those handling this destructive agency require a sharp and searching inquiry into the occurrences and accidents that are not unlikely to happen from uninsulated high-voltage wires, and they should take into account the acts of children, of strangers, as well as the probable results of storms and high winds. The mere fact that the intervening act of another contributed towards the injury does not relieve the defendant of the responsibility for the original negligence of leaving the wires uncovered. (*Railway Co. v. Gilbert,* 70 Kan. 261, 78 Pac. 807.)

In *Clark v. Powder Co.,* 94 Kan. 268, 146 Pac. 320, it was said that "mere intrusion of an intervening agency does not always excuse the original wrongdoer." (p. 272.) There the powder company left nitroglycerin near the place where it had been used. A workman fearing that it might injure some one and for greater safety took it and placed it in a stone fence of an abandoned graveyard where it was found by boys who were injured by it. It was held that although there was in-

tervention of a responsible person in putting the nitroglycerin where it was found, it did not exonerate the company, the original wrongdoer, from liability for injury to the boys who found and were injured by the explosive. It was further determined that according to the usual experience of mankind the intervention and the result were occurrences to have been anticipated and against which the company should have provided. If accidental contacts with the unprotected wires or contacts which occur through the act of third parties, either adults or children, are not within reasonable anticipation there is little if any reason for insulation of wires which are placed thirty feet above the ground. What is the necessity for insulating wires hung beyond the reach of any one? It is surely not alone required for the protection of employees who may have to handle them. These were not the only ones for whom the law requires such protection. Insulation is required largely because the uncovered high-voltage wires are a menace to the public through contacts of an accidental character or by the thoughtless action of third parties or through the acts of children. Occurrences of this kind happen often enough in a thickly settled community to admonish those in control of such wires to cover them and provide against such interventions and contacts. All know the proclivities of children to play and experiment with wires, or to fly kites so that the string or wire controlling them frequently becomes entangled with overhead wires in cities. Through such attachments the electric current may be conducted in dangerous voltage to the ground and within reach of persons passing along the streets or other places where they are entitled to go. Current may be carried from these high-voltage wires not only by wire or metal appliances of various kinds, but if the limb of a tree, the string of a kite and certain wooden appliances are wet they, too, will serve to conduct the destructive current to the ground and imperil those who come within reach of such things. Boys may be subjected to the peril of the deadly agency while climbing trees or upon buildings which stand near where such wires are placed and thus get into the danger zone. Because these and like contacts happen frequently and are so likely to occur with serious resulting injuries the law requires the covering of the dangerous wires even though they

be strung high and can not be reached except through the acts of other parties or some other intervening agencies. Whether or not the company should have anticipated such contacts with its uninsulated wires was fairly a question for the determination of the jury.

In *Electric-light Co. v. Healy,* 65 Kan. 798, 70 Pac. 884, the company placed its uninsulated wires along the ends of timbers outside of a balustrade or iron railing of a bridge, and a boy who climbed over the railing came into contact with the unprotected wires and was killed. In that instance there was no intervening agency, but it was held that the company was bound to know that boys in the buoyancy of sport and lacking the discretion of older years, were liable to venture into dangerous proximity to the negligently kept wires, and that as the company had knowledge that the wires were uninsulated it was responsible for the death of the boy.

Upon the question of the occurrences a company maintaining unprotected wires is bound to anticipate, the case of *Temple v. Electric Light, Etc., Co.,* 89 Miss. 1, 42 South. 874, has a bearing. There the company strung its high-power and uninsulated wires through a tree which had low branches. A boy climbed the tree and while playing among the branches came into contact with the wires and was injured. It was contended that the company could not reasonably have anticipated that boys would climb the tree and reach its wires; but the court ruled that as the company was bound to exercise the highest measure of care in controlling the deadly agency, it should have foreseen and made provision for such an incident, saying:

"The immemorial habit of small boys to climb little oak trees filled with abundant branches reaching almost to the ground is a habit of which corporations stretching their wires over such trees must take notice." (p. 8.)

Another case touching the question of the probabilities to be anticipated is *Pierce v. United Gas and Electric Co.,* 161 Cal. 176, 118 Pac. 700. The action was brought to recover for the death of two boys who in playing brought a loose wire into contact with a high-power wire that was uninsulated. The loose wire which hung from a pole and had at one time been used, was harmless unless brought into contact with an uncovered high-voltage wire. One of the boys made a swing of

the loose wire and while swinging brought it into contact with the live wire and received a shock. He told his companions of this and some of them being curious about the sensation tried the experiment. One of them fell dead with the wire in his hand and his brother who jumped to his rescue was also killed by the current. The court held that the maintenance of the dangerous contrivance in a place to which children might be expected to go was negligence, and that the question as to whether the company might reasonably have anticipated that the loose wire might be brought into contact with the live wire by boys, was one for the determination of the jury.

In *Labombarde v. Chatham Gas Co. and City of Chatham,* 10 Ont. L. Rep. 446, a loose guy wire had been thrown by some unknown person over high-power wires and another came into contact with it and was injured. The court said:

"If the actual throwing of the loose guy wire over the other wires were the act of some passer-by, who thought thus to put it out of the way, or even of some mischievous urchin, it seems to me such a likely and probable thing to happen that it is not too remotely connected with the act of cutting the guy wire from its fastenings and leaving it loose on the ground to render those guilty of the latter negligence liable for the consequences which ensued though an independent agency had intervened as their immediate cause." (p. 448.)

A case touching the question before us is *Card v. Wenatchee Valley Gas and Elec. Co.,* 77 Wash. 564, 137 Pac. 1047. There an electric-light company left a high-tension wire, which extended over the land of another, uncovered. The owner of the land, in handling an iron pipe, happened to bring it into contact with the wire of the company, which was seventeen feet above the ground, and he was killed. The court, after commenting on the high degree of care to be exercised by those transmitting the deadly current through the community, remarked:

"It seems to us it is not so much a question of what particular incident might occur to bring a person in contact with the wire; but whether a person, following his usual avocation where he has a right to be, might in any manner be brought in contact with the wire. It seems to us, in view of the deadly character of this powerful current, the high degree of care required of appellant in its maintenance, and the fact that it was suspended over the land of deceased at the height of seventeen feet, the jury might well conclude that appellant was bound to anticipate occurrences of the nature here involved." (p. 569.)

There is much conflict in the authorities as to the responsibility of those who negligently conduct electric current in places

where people are expected to go and where children are likely to play, and just what occurrences or risks the negligent company is bound to anticipate. While the supreme court of Pennsylvania, as we have seen, in *Green, Appellant, v. West Penn. Rys. Co.*, 246 Pa. St. 340, 92 Atl. 341, L. R. A. 1915 C, 151, held that the company was not responsible for an injury to boys who threw a wire over an uninsulated power wire because the act of the boys was not one to be foreseen by the company, but the same court in *Mullen v. Wilkes-Barre G. & E. Co.*, 229 Pa. St. 54, 77 Atl. 1108, held that a boy who climbed into a tree through the upper branches of which uninsulated wires of the company passed, and was injured, was entitled to recover for the injury. There the defective insulation had existed for about six months, and it was known to the company that children played near the tree. The court rejected the theory of the company that the children were trespassers to whom it owed no duty, and held that as it knew children were liable to be in proximity to the wires it should have kept them in condition to avoid danger. In the syllabus of the case it was stated that "a company which uses such a dangerous agent, as a wire charged with an electric current, is bound not only to know the extent of the danger, but to use the very highest degree of care practicable, to avoid injury to every one who may be lawfully in proximity to its wires, and liable to come accidentally or otherwise in contact with them." (Syl. ¶ 2.)

The case of *Luehrmann v. Gas Light Co.*, 127 Mo. App. 213, 104 S. W. 1128, decided by an intermediate court, held that the placing of another wire in contact with the high-tension wire by boys in play could not have been foreseen by the company and was not the proximate cause of the injury. In a case before the supreme court of that state, a high-tension wire had been left in an uncovered and unsafe condition, and a boy with an inclination to experiment with electricity attached a wire to the defective wire of the company and brought it down to the ground near the steel cables of a swing in the yard. The father of the boy, in passing, took hold of the swing and was instantly killed. Here there was an intervening agency by the act of a boy of immature mind. The court held it to be settled law that " 'a defendant may be liable even if the accident was not caused by his *sole* negligence. He is liable if his negligence concurred

with that of another, or with the act of God, or with an inanimate cause, and became a part of the direct and proximate cause, although not the sole cause' (*Newcomb v. N. Y. C. & H. R. Ry. Co.*, 169 Mo. 409, 422, *et seq.*, and cas. cit.)" (p. 623.) It was further held that an electric-light company which negligently permits its current to be grounded can not escape liability for the death of one who innocently comes in contact with it at a point where a stranger has made another ground, on the theory that the particular injury could not have been anticipated by any reasonable man. (*Harrison v. Kansas City El. Light Co.*, 195 Mo. 606, 93 S. W. 951, 7 L. R. A., n. s., 293. See, also, *Finch v. City of Ottawa*, 190 Fed. 299; *Caruso v. Troy Gas Co.*, 153 App. Div. 431, 138 N. Y. Supp. 279; Note, 52 L. R. A., n. s., 587.)

There is some complaint of the instructions given by the court, but the parts challenged are in accord with the views that we have taken, and the defendant at least has no cause to complain of any of the instructions. Some complaint is made of the ruling denying the motion for judgment on the special findings, but there is nothing substantial in the complaint nor in the objection to the ruling refusing to grant the motion for a new trial.

The judgment is affirmed.

DAWSON, J. (dissenting) : It does not seem to me that the injuries of the plaintiff could have been anticipated by the defendant, nor do I think that the excellent principles of law mentioned in the opinion quite reach this case. I therefore dissent.