No. 31,181

EMANUAL SCHWAB, *Appellant*, v. JOHN NORDSTRÓM and RUBEN NORDSTROM, *Appellees*.

(27 P. 2d 242.)

Opinion filed December 9, 1933.

*William E. Smith,* of Wamego, *Fred R. Smith, Raymond E. Smith, Gerald F. Smith,* all of Manhattan, and *A. E. Crane,* of Topeka, for the appellant.

*Hal E. Harlan* and *A. M. Johnston,* both of Manhattan, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for assault and battery. Each of the defendants answered denying liability and by cross petition sought to recover similar damages from plaintiff. The jury answered special questions and returned verdicts which were construed by the court as being against each of the parties seeking to recover. Plaintiff has appealed.

It appears from the record that plaintiff had a hay-baling outfit with which he went from farm to farm throughout the neighborhood baling hay at an agreed price per bale. The defendant John Nordstrom and his married son, Ruben, lived together on a farm which they operated. They employed plaintiff to bale their hay, which he did one day, finishing in the evening. Plaintiff reported to defendants that he and one of the workmen had counted the bales and there were 293, and John Nordstrom gave plaintiff a check for the baling of that number of bales. The next day defendants hauled the hay to the haymow of the barn and in doing so counted the bales and found only 221. Defendant John Nordstrom then went to the bank on which the check was drawn, and after discussing the matter with the banker concluded to stop payment on the check given

plaintiff until he could see plaintiff to make the proper settlement. A few days later plaintiff went to defendants' home and they talked about the check and the number of bales and went to the haymow of the barn to count them. There is a decided conflict in the testimony as to what was said by each of the parties, both at the house and while they were in the haymow. We need not repeat the different versions of this testimony. While in the haymow plaintiff started to count the bales on two different occasions, but quit before he got through, contending the hay was piled in such a way he could not count them well. He finally asked defendants where the rest of the hay was, intimating, as they thought, that they had not brought all the hay to the barn. This inflamed the tense feeling already existing between the parties. Plaintiff started to go down from the haymow. In doing so he passed near Ruben Nordstrom. From the haymow he went down the narrow stairs, which turned near the bottom into a small room used for a harness room or a feed room. Ruben followed not far behind him. Near the bottom of the stairs he and plaintiff got into a fight. The testimony of each lays the blame for starting it on the other. John Nordstrom came down the stairs soon and found Ruben lying on the floor and plaintiff on top of him, and they were fighting. Plaintiff was a larger man and stronger than Ruben. John Nordstrom grabbed or struck plaintiff and pushed or pulled him off Ruben, and all three of them fought. Plaintiff begged them to quit hitting him and said he would leave if they would let him up. They let him up, he went out and got in his car, and drove away. All of the parties were bruised to some extent, plaintiff the more severely, particularly about the face, and he had been struck with something across one eye. Perhaps he sustained that injury at some time during the melee when he fell or was pushed against a bushel basket of oats in the feed room.

The principal injury for which plaintiff claimed damages was the loss of the sight of the injured eye, and there was evidence on his behalf that the loss of sight of the eye resulted from the injury. There was other evidence that the loss of the sight of the eye could not have resulted from the injury; that for years, perhaps from birth, there had been only partial vision in that eye; that the condition was one which naturally grew worse, and that this was not affected at all by any injury received in the fight. The jury answered special questions as follows:

"1. Was the apparent danger to the defendant Ruben Nordstrom, at the time John Nordstrom took part in the encounter between Ruben Nordstrom and Emanuel Schwab, such as to induce a person exercising reasonable and proper judgment, to interfere in order to prevent injury to his son, Ruben? A. Yes.

"2. If you answer the preceding question in the affirmative, then state whether John Nordstrom used more force than was necessary to protect his son. A. We do not know.

"3. At the time the plaintiff, Emanuel Schwab, left the hayloft, did he intend to leave the premises of John Nordstrom? A. Yes.

"4. If the defendants had remained in the hayloft for a short interval of time, would the altercation have occurred between the plaintiff and defendants? A. We do not know.

"5. Did the plaintiff lose his eyesight in the left eye as a result of any injures he received on August 18, 1930, in the altercation with the defendants? A. We do not know.

"6. If you answer question No. 5 in the negative, please state whether or not he could see out of his left eye up to the 18th day of August, 1930. A. Yes.

"7. Did the defendants, John Nordstrom and Ruben Nordstrom, on the 18th day of August, 1930, in the altercation with the plaintiff, use more force than was necessary to protect themselves or either of them from any injury that might have been done to them by the plaintiff? A. We do not know."

Other questions answered relate to whether the parties were engaged in mutual combat, and the jury found they were not.

Appellant contends that the court should have required the jury to give more definite answers to questions Nos. 2, 4, 5 and 7. The answers given by the jury to questions 2, 5 and 7 were properly construed as against the party on whom was the burden of proof with respect to the matters to which the questions relate. (*Meek·v. Wheeler, etc., Investment Co.*, 122 Kan. 69, 72, 251 Pac. 184.) Question 4 is purely a speculative question, and perhaps the jury answered it as well as anyone could. We regard both the question and the answer as immaterial. (*Litsch v. Electric Co.*, 95 Kan. 496, 504, 148 Pac. 632.)

The jury first returned a verdict which is not in the record. After conferring with counsel the court asked the jury to retire and return a verdict, or verdicts, upon forms furnished. Later the jury returned three verdicts. One was for the plaintiff and against both defendants and assessed plaintiff's recovery at "no damages actual or punitive and assess one-third (⅓) of the court costs to the plaintiff." Another verdict was in favor of John Nordstrom against the plaintiff, and the amount of his recovery was fixed at no damages actual or punitive and one-third of the costs were assessed to him.

The third verdict was in favor of Ruben Nordstrom against the plaintiff, and the amount of his recovery was assessed at no damages actual or punitive and one-third of the costs were assessed to him.

The parties agree that the efforts of the jury to assess costs should be treated as surplusage. (*Hall v. Kansas City*, 112 Kan. 752, 212 Pac. 875.)

Appellant argues that when the jury found in favor of plaintiff and against each of the defendants it was error not to assess some damages, hence that the court should not have received the verdict, or that a new trial should have been granted. But the same argument can be made with respect to each of the defendants. While the forms of the verdicts are awkward, considering all of them, it is clear that the jury found that none of the parties claiming damages had made out a case in which he was entitled to recover damages. That is the view taken by the trial court. There is evidence in the record from which the verdicts as so interpreted can be harmonized. While plaintiff was the more severely injured, there is evidence, although conflicting, from which the jury might very well have found that plaintiff was the aggressor and for that reason not entitled to recover any sum as damages. With respect to the verdicts for each of the defendants, without allowing them damages, these may be sustained upon the view that although plaintiff was the aggressor the actual damage sustained by each of the defendants was inconsequential. This was the second trial of the case, the jury having been unable to agree at the first trial. The judge of the trial court had heard both trials. The court had no difficulty in interpreting the verdicts as above outlined, which appears to be the only reasonable interpretation to give them, and approved the verdicts and declined to grant a new trial. General verdicts should be construed to give them effect if that can reasonably be done. In 27 R. C. L. 859 it is said:

"If by a reference to the record any uncertainty in the verdict can be explained, it is sufficient to sustain the appropriate judgment; and if the parties could not have been prejudicially affected, the fact that the form is unusual and not according to practice is not such a defect as to justify a reversal."

To the same effect, see 38 Cyc. 1777, 1778, and 64 C. J. 1066.

We are unable to see anything in the record which requires a reversal, and the judgment of the court below is affirmed.

Johnston, C. J., and Hutchison, J., not sitting.