No. 28,017.

D. L. McGARR et al., *Appellees*, v. The E. V. Schnoor Cigar
Company et al., *Appellants*.

(266 Pac. 73.)

SYLLABUS BY THE COURT.

1. Malicious Prosecution—*Damages—Award in Individual and Partnership Capacity*. In an action by a partnership and the individuals composing it to recover damages from creditors for instituting involuntary bankruptcy proceedings against them maliciously and without probable cause, where the case was tried on the theory that the plaintiffs were partners and were not claiming as individuals, the awarding of damages by the jury to them in both capacities is erroneous, and such award and finding were properly set aside.

2. Same—*Measure of Damages for Injury to Business or Property*. The measure of damages for loss of or injury to business or property in a case as above stated is not the difference between the value of such business and property at the time of the instituting of the bankruptcy proceedings and the amount of the indebtedness of the plaintiffs at that time, even with an admission in the record that the indebtedness was later extinguished by assigning the property to the Credit Men's Association.

3. Same—*Want of Probable Cause—Disputed Facts Present Question for Jury*. In an action for damages for malicious prosecution, if the facts tending to establish the existence or want of probable cause are in dispute, it is then the duty of the court to submit such question to the jury.

4. Same—*Want of Probable Cause—Disputed Facts*. The court may properly conclude such matter is in dispute where there is conflicting testimony, even if some of the isolated facts, standing alone, might be sufficient to make it a matter of law for the court.

5. Same — *Pleading — Continuation of Prosecution*. The petition considered, and held to be broad enough to include continuation of prosecution after the first hearing in bankruptcy.

6. Same—*Advice of Counsel—Answers to Special Questions*. The answers to special questions considered as to defendants' relying upon the advice of counsel, and held that they do not sustain that conclusion.

7. Same—*Instructions*. The instructions given and those requested and refused compared, and held that, aside from those given as to measure of damages, there was no error.

8. Same—*New Trial as to Damages Only*. In an action for damages as stated in the first paragraph above, where the only damages claimed are compensatory and not punitive or exemplary, the amount of such damages is so en-

Appeal and Error, 4 C. J. p. 1195 n. 90. Damages, 8 R. C. L. 510. Malicious Prosecution, 38 C. J. pp. 447 n. 49, 474 n. 72, 505 n. 32, 517 n. 1, 5; 18 R. C. L. 58. New Trial, 20 R. C. L. 222. Trial, 38 Cyc. p. 1711 n. 19.

tirely distinct and separable from the other issues in the case as to come within the provision of R. S. 60-3004 for a new trial on the issue of damages alone.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed April 7, 1928. Affirmed.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, Henry V. Gott,* all of Wichita, *A. M. Dean, W. L. Cunningham* and *D. Arthur Walker,* all of Arkansas City, for the appellants.

*Chester I. Long, Joseph D. Houston, Austin M. Cowen, Claude I. Depew,* all of Wichita, and *Gordon Slater,* of Oklahoma City, Okla., for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action brought by D. L. McGarr, M. B. McGarr, and the Owl Drug Company, a copartnership composed of D. L. McGarr and M. B. McGarr, to recover damages from the defendants, the E. V. Schnoor Cigar Company and the Ranney-Davis Mercantile Company, on the ground that these defendants, in conjunction with others, maliciously and without reasonable or probable cause, instituted involuntary bankruptcy proceedings against the plaintiffs. The trial resulted in a verdict for plaintiffs for $12,350.

In addition to the general verdict, the jury returned answers to twenty-six special questions. Motions were made to set aside certain answers and render judgment for defendants on the answers, notwithstanding the general verdict, and for a new trial. The motion to set aside the answers was sustained as to the answer to question 26, which names the amount of damages allowed and indicates in six items the purposes for which the separate allowances were made, but was otherwise overruled. The motion for a new trial was sustained only as to the question of damages, and overruled as to all other matters. Defendants appeal, assigning numerous errors, which, it is urged, should result in granting the defendants a new trial generally; and, also, because in this case the question of damages only is not reasonably separable. The plaintiffs present a cross appeal, complaining of error in setting aside the finding of damages and granting a new trial as to damages, insisting that it was error to do so, and, further, insist that judgment should now be rendered in their favor in accordance with the verdict and finding of the jury.

The names of the plaintiffs are purposely set out in full in this statement because of subsequent reference thereto. The evidence

shows that M. B. McGarr is the wife of D. L. McGarr. There is some confusion in the testimony as to the wife being a partner and owner. The defendants are wholesale corporations in Kansas, one handling cigars and the other groceries. Substituting, for the purpose of brevity, the word defendants for the names of the two defendant wholesale houses, the following are some of the important questions and answers:

"8. Do you find that after communicating with the . . . [defendants] and making other investigation as to the condition of the plaintiffs, Kirkendall and Wilder, attorneys for the . . . [defendants], advised each of said . . . [defendants], that involuntary bankruptcy proceedings were proper and justifiable? A. Yes.

"9. Did the . . . [defendants] rely and act upon the advice of their said attorneys in joining in the proceedings in involuntary bankruptcy against plaintiffs? A. Not entirely.

"10. Before the petition in bankruptcy was filed, had the . . . [defendants] been able to collect of the plaintiffs their accounts which were overdue when the bankruptcy proceedings were commenced? A. Not promptly.

"11. At the time the petition in bankruptcy was filed was the Owl Drug Company able to pay its indebtedness to the . . . [defendants]? A. Yes.

"14. At the time of the filing of the petition in bankruptcy had the . . . [defendants] diligently endeavored without success to collect their account against plaintiffs? A. No.

"15. Do you find that the . . . [defendants] joined in said petition in bankruptcy without malice? A. No.

"15a. Do you find that the . . . [defendants] joined in said petition in bankruptcy in order to collect as much of their accounts as possible against plaintiffs? A. Yes. But with neglect of proper investigation.

"16. Did attorneys Kirkendall and Wilder advise their clients, the . . . [defendants], before filing the proceedings in bankruptcy that the evidence which they (Kirkendall and Wilder) had obtained and the facts which they (Kirkendall and Wilder) had discovered were sufficient to justify the defendants in starting said bankruptcy proceedings? A. Yes.

"17. Did the . . . [defendants] believe and rely upon said advice? A. Not entirely.

"18. If you find for the plaintiffs, that there was lack of probable cause, state specifically what fact or facts the defendants or their attorney had notice or knowledge of before beginning said bankruptcy proceedings which showed lack of probable cause? A. They had notice of sale, and that all creditors would be paid in full through the First State Bank at Carmen, Okla., March 3, 1923.

"19. Did attorneys Kirkendall and Wilder know all facts with reference to probable cause for said bankruptcy proceedings which would have been disclosed to them by diligence at the time they advised their clients that bankruptcy proceedings were proper and justifiable? A. Yes.

"21. Did attorneys Kirkendall and Wilder make their own independent investigation of the facts upon which they based their advice to clients? A. No.

"23. At the time of filing the petition in bankruptcy, did the . . . [defendants] have reasonable cause for believing that plaintiffs were mortgaging the bulk of their visible assets without paying the defendant cigar company's and mercantile company's bills? A. No.

"24. At the time of filing the petition in bankruptcy, did the . . . [defendants] have reasonable cause for believing that plaintiffs were selling the bulk of their visible assets without paying the . . . [defendants'] bills? A. No.

"25. What do you find the total indebtedness against the Owl Drug Store and the plaintiffs was when the contract was entered into between McGarr and Dean? A. Between $9,000 and $10,000.

"26. If you allow the plaintiffs damages for any of the following items, then how much do you allow:

"1. For expenses paid by the plaintiffs in defending the bankruptcy action. A. $600.

"2. For the time lost by the plaintiffs in making such defense. A. $6,000.

"3. Loss of or damage to the business or property of the plaintiffs occasioned by such proceedings. A. $3,000.

"4. For impairment of social standing. A. $500.

"5. For impairment of credit. A. $1,500.

"6. Damage to their reputation by the initiation and prosecution of such proceedings. A. $750."

The reasons of the trial court for setting aside the answer to special question 26 and granting a new trial as to the amount of damages are best stated by quoting his rulings and comment thereon as found in the journal entry as follows:

"The motion of the defendants to set aside special findings of the jury is sustained in so far as it applies to special finding No. 26, items 1, 2, 3, 4, 5 and 6. The instruction covering item 3 of special finding No. 26 is clearly erroneous as to the measurement of damages.

"The motion to set aside the special findings of the jury is overruled in all other respects.

"The motion of the defendants for judgment on certain of the special findings of the jury is overruled.

"The motion of the defendants for a new trial is sustained only as to the question of damages, and especially those damages referred to in special finding 26 of the jury.

"The motion for a new trial as to all other matters is overruled.

"The plaintiffs in this action are designated as D. L. McGarr and M. B. McGarr and the Owl Drug Company, a copartnership composed of D. L. McGarr and M. B. McGarr. In other words, D. L. McGarr and M. B. McGarr brought this action both as individuals and as a partnership. The joinder of these parties was clearly erroneous if the joinder had been attacked by proper motion, but no such motion was made. The case was tried on the theory that the plaintiffs were partners and that they did not claim as individuals,

and the instructions were given on this theory. During the trial no contentions were made, as I recollect it, that the plaintiffs sued as individuals and also as partners. This being true, the damages which were allowed by the jury are not correct and the instructions of the court in reference to such damages were not correct."

The comment candidly, but of course reluctantly, made by the trial court about the confusion as to parties plaintiff is convincing when applied to the items of damages allowed by the jury. Some of these items could not possibly be sustained by a copartnership. It has no social standing or reputation to be impaired. The impairment of credit might apply to either a partnership or individuals. Which does it mean here? Or does it mean both? And are they entitled to both? The court says the case was tried on the theory that plaintiffs were partners and were not claiming as individuals. The jury, at least, considered them as individuals in one, if not more, of the items of allowance. We think the court was right in concluding that was an error and a new trial should be granted to correct it.

Counsel for appellees ably argue that this is a mere misjoinder, at most, which can be waived, and, because defendants have not raised the question earlier in the trial, they have waived it. Perhaps they have, but that does not go to the question of being adjudged to pay impossible damages. Suppose plaintiff had been a corporation and damages had been awarded it for "impairment of social standing." It does not seem to us to be a question now of misjoinder; neither does it appear to be a harmless error.

That part of the instruction on the measure of damages covering item 3 of special finding No. 26 to which the trial court refers in the journal entry is as follows:

"Respecting the loss of or injury to the business or property of the plaintiffs, if you should find from a preponderance of the evidence that the plaintiffs lost their property and their business, then the measure of their damages for such loss would be the difference between the value of said business and property at the time of the institution of the bankruptcy proceedings and the amount of their indebtedness at said time."

Appellees urge that this was the correct measure of damages, and, at the same time, admit that an instruction on the difference between the value immediately before and immediately after the bankruptcy proceedings would be a proper one. They direct our attention to the case of *Kerns v. Kansas City*, 79 Kan. 562, 100 Pac. 624, where it was said:

McGarr v. Schnoor Cigar Co.

"In an action to recover damages the plaintiff is entitled to prove his loss under any proper theory as to the measure thereof." (Syl. ¶ 2.)

That case had in it the intervening element of repairs. Where that element is present the measure of damages could be either the usual one of the difference in the value immediately before and immediately after the injury, or such difference immediately before the injury and immediately after the repairs, plus the cost of repairs and incidental loss. No such element is in the case at bar. It is argued that the measure given by the court was more favorable, under the facts of the case, to the appellants, and was therefore a beneficial error to them. That feature could properly have been urged in the trial· court, but not so well on review. It is said one of the admissions made at the close of taking the testimony was intimated as the reason for deviating from the usual measure in the instructions, the admission being that after the close of the bankruptcy proceedings, when the plaintiffs assigned all their property to the Credit Men's Association, the claims of all the creditors were extinguished. We agree with the trial court that such admission may look feasible, but it will not change the general rule as to the proper measure of damages. (*Broadie v. Randall,* 114 Kan. 92, 216 Pac. 1103.)

Appellants urge that there was no proof of want of probable cause, and therefore the court erred in overruling their demurrer to the evidence, in refusing to direct a verdict for defendants, and in not rendering judgment for defendants on the answers to special questions. They insist that the failure to succeed in the bankruptcy proceeding is, under the authorities, not conclusive, nor even good evidence of want of probable cause. They also claim that the facts admitted by. the plaintiffs as to the mortgage indebtedness and failure to follow the provisions of the bulk-sales law would show probable cause. They also direct our attention to a multitude of facts and circumstances shown in the evidence to establish probable cause. Any of these alone would be enough to establish probable cause, but when they are not purely matters of law they have to be considered with the other facts and circumstances of a conflicting character. From a careful examination of the evidence we cannot say there is no conflict on these questions.

"The existence of malice is ordinarily a question of fact for the jury, but where there is no dispute in the testimony, the presence or absence of probable cause is a question of law for the court." (*Walker v. Smay,* 108 Kan. 496, syl. ¶ 2, 196 Pac. 231.)

With the conflict in the evidence which there is in this case on the question of probable cause and the companion question of malice, the trial court very properly referred both of them to the jury with instructions.

"In an action for malicious prosecution, the question of probable cause is primarily one for the court, but if the facts tending to establish the existence or want of probable cause are in dispute, then it is the duty of the court to submit the question to the jury." (*A. T. & S. F. Rld. Co. v. Watson*, 37 Kan. 773, syl. ¶ 1, 15 Pac. 877.)

Evidently the court did not think it was a clear case of failure to prove want of probable cause when he declined to sustain the demurrer to the evidence; and the evidence shows enough to cause him to doubt on this subject, in which case the question should be referred to the jury.

Appellees say that if the information acquired prior to instituting bankruptcy proceedings was insufficient to advise defendants that plaintiffs were not insolvent and had not committed acts to subject them to proceedings in bankruptcy, they obtained such knowledge at the first hearing in bankruptcy and proceeded without probable cause in all subsequent efforts on their part. To this appellants reply that there is no allegation in the petition charging them with further proceeding, but only with the institution of the proceedings. An examination of the petition shows such expressions as, "participated in said bankruptcy proceedings throughout their entire pendency," "that during the pendency of said bankruptcy," "well known to them at all times," "the said action of the defendants was maliciously brought and maintained," "wantonly brought and maintained." These will fully cover the fact of continuing after the first hearing; so that it was proper for the court and jury to consider whether or not there was probable cause after the proceedings were instituted, even if there had plainly been probable cause at first.

Appellants rely upon the advice of counsel as a complete exoneration, and the court so instructed the jury. It is said in *Schippel v. Norton*, 38 Kan. 567, 16 Pac. 804, that acting upon the advice of counsel completely rebuts the allegation of the want of probable cause. It is also stated in *Railroad Co. v. Brown*, 57 Kan. 785, 48 Pac. 31, that in order to completely absolve one the advice must be acted upon in good faith, and only where all the facts known to the informant and all which can be learned by a diligent effort to acquire information have been laid before such counsel. The same

rule is restated and fully discussed in *Haines v. Railway Co.*, 108 Kan. 360, 195 Pac. 592, and emphasis is placed upon having obtained all the information available. In this case evidently the jury did not think that had been done. See answers to questions 15a, 18, 19, 21, 23 and 24.

Two other matters in that connection deserve special consideration—the possible bad faith and financial interest of counsel and the possible confusion between the terms attorneys and agents. The court specifically and properly instructed the jury in instruction No. 14 that defendants would not be liable for the bad faith of counsel if defendants believed such advice was given in good faith. No one of the answers alone, as that to questions 9 and 17 —"Not entirely"—would be sufficient to show the finding of the jury in these particulars, but from the answers to other questions, 15a, 16, 18 and 21, all considered together, a lack of investigation by defendants and attorneys is found which would come under the first two of the qualifying words used in the instruction on this subject, even if it did not reach the third, more definitely indicating bad faith of attorneys, viz., "mistakenly, wrongfully, or maliciously advised their clients." It was necessary for the court to inform the jury as to the only legal way in which corporations may act, and it is, of course, possible that the jury may have thought of the attorneys, in their capacity as legal advisers, as the agents of the corporations which they were advising, but this is not probable. It does not impress us that there was a very great danger of confusion as to the appropriate use and meaning of these two terms.

Instructions were requested by the appellants which were not given, and exceptions taken to some that were given. After a careful comparison, it appears that those given by the court reasonably well meet the requests. On the whole, except those as to the measure of damages, we see no reversible error in them.

Appellants maintain that a limited new trial in a case like this will be prejudicial to the defendants, and that this issue is not separable, as required by statute. (R. S. 60-3004.) We recognize that the issue should clearly appear to be entirely distinct and separable from the other issues of the case in order to justify a new trial on one issue alone. (20 R. C. L. 222.) The only damages claimed in this case are compensatory. They can be established or ascertained without reference to malicious motive or intention, probable cause, or any other of the many features involved in the

other branches of the case. The case would be quite different if there were a claim for punitive or exemplary damages. In the case of *Bracken v. Champlin,* 114 Kan. 882, 220 Pac. 1027, the court approved a limited new trial as to damages only, where all the other issues were decided in favor of the plaintiff in an action for alienation of affections. In *Fontana v. Integrity Mutual Casualty Co.,* 120 Kan. 406, 243 Pac. 1035, an action for recovery on an industrial insurance policy, the court directed a new trial on the amount to be recovered alone. *Brokmann v. Lawson,* 117 Kan. 386, 232 Pac. 601, was for damages for assault and battery. In that case the new trial covered the amount of damages only. See, also, *Worth v. Butler,* 83 Kan. 513, 112 Pac. 111; *Railroad Co. v. Thisler,* 96 Kan. 184, 150 Pac. 580; *Harris v. Drenning,* 101 Kan. 711, 168 Pac. 1106.

The judgment of the trial court, granting a new trial on the question of amount of damages only, is affirmed.