No. 31,057

CLINTON BAKER, *Appellee*, v. HARRY LARSON, *Appellant*.

(25 P. 2d 375.)

Opinion filed October 7, 1933.

*I. T. Richardson* and *C. C. McCullough,* both of Emporia, for the appellant.
*W. L. Harris* and *W. C. Harris,* both of Emporia, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is what is deemed a malicious-prosecution case. Harry Larson, the defendant, is the owner of a farm in Chase county on which a crop of wheat and rye was grown in 1931. It was harvested with a combine, and plaintiff, Clinton Baker, was employed by the defendant to haul wheat, sown the prior year by another, from the combine to the bins on defendant's farm, for which plaintiff was to be paid in wheat. He was also employed to haul part of the wheat to the market at Plymouth. When the hauling was done defendant claimed that plaintiff had embezzled some of his wheat. Defendant then filed a complaint before a justice of the peace charging Baker with willfully and feloniously embezzling wheat of the defendant of the value of $44. On this complaint a warrant was issued on which plaintiff was arrested and placed in jail, where he was held for some time, until counsel was procured and a bond given for an appearance at a future hearing. In the hearing, the justice, on the evidence presented, found and decided that it did not appear that there was probable cause for believing that Baker had committed the offense charged, and he was discharged. No further prosecution of plaintiff was ever instituted by Larson, and further prosecution of the charge has been abandoned by him. Baker then brought this action alleging in effect that Larson instituted the prosecution maliciously and without probable cause, to the great injury of plaintiff; that he was compelled to employ attorneys to defend himself, and had been confined in jail for a time, for which he asked actual damages for attorney's fees in the sum of $150, $12 for the time he was in jail, and $10,000 as punitive damages.

In the trial with a jury the finding was that the prosecution instituted by Larson was brought maliciously and without probable cause, and plaintiff was awarded damages in the sum of $150 for attorney's fees, $12 for loss of time, and $1,100 as punitive damages. Judgment was accordingly given, from which defendant appeals.

There was no dispute as to the institution of the prosecution by Larson; the arrest and imprisonment of Baker; the subsequent hearing before the justice of the peace, and that Baker was discharged; no dispute that there was an agreement that Baker should haul wheat to Larson's bins and was to be paid in wheat. There is a

dispute as to the quantity of wheat that Baker should receive for that service. Larson testified he was to receive 100 bushels of wheat, while Baker's testimony was that he was to be paid 100 bushels and also the wheat grown on a volunteer wheat field, estimated to produce 175 bushels. Later, those running the combine refused to cut the volunteer wheat because of weeds in it. Larson, it was found, then agreed that Baker should have 175 bushels out of the wheat grown on other fields, as a substitute for the volunteer wheat. This constituted the principal controversy between the parties as to the payment for the services rendered by Baker. Upon this theory Baker was entitled to 275 bushels, but Larson insisted that he was only entitled to 100 bushels. Baker had placed in his own bins, out of the wheat hauled, about 267 bushels, a little less than the agreed quantity of 275 bushels. Larson contended that Baker had appropriated to himself out of the wheat an excess quantity, and proceeded to prosecute him for embezzlement. On this question Larson testified that no agreement was made that Baker was to have 175 bushels because the volunteer wheat could not be cut and delivered to him, and he procured a witness who testified that Baker had admitted the misappropriation of wheat and had agreed to restore it.

On the trial Baker produced the evidence of three witnesses who testified to the effect that when it was learned that the volunteer wheat could not be cut, because the field was so weedy, Larson then agreed that Baker should have 175 bushels of wheat grown on the other fields, in place of the volunteer wheat. These witnesses stated that the agreement was made in plaintiff's kitchen at a stated time while the harvesting was in progress and in their presence. Upon the testimony the jury made these findings:

"1. Did the defendant act maliciously in causing plaintiff's arrest? A. Yes.
"2. If your answer to No. 1 is 'yes,' state the facts that indicate malice. A. Withholding facts from his attorney intentionally.
"3. Did the defendant consult an attorney and follow his advice, in good faith, in causing plaintiff's arrest? A. No.
"4. Did the defendant make a full statement of the facts to such attorney, as he then believed them? A. No."

It cannot be questioned that there is sufficient evidence to support the findings of the jury on the principal question as to malice and the want of probable cause for the prosecution of plaintiff.

It is contended by the defendant that whether there was probable

cause was a question for the court to determine and not for the jury. It appears, however, that the question of probable cause was a mixed question of law and fact, and therefore one for the jury, under proper instructions. There was a real dispute here as to misappropriation of wheat and therefore as to probable cause for the prosecution, and it has been repeatedly decided that in such a case it is proper to submit the question to the jury where the court has instructed and determined that certain established facts do or do not constitute probable cause. Generally speaking, the matter of probable cause for instituting a prosecution is a question primarily for the court, but where there is a dispute as to the facts and the court instructs what will constitute probable cause, and that if certain facts are found to be true there will be a lack of probable cause, and where that fact is found to be true and the court renders a judgment on the finding, the court has practically determined that there was a want of probable cause for the prosecution.

In *Bell v. Matthews,* 37 Kan. 686, 16 Pac. 97, syl. ¶ 2, it was said:

"In an action for malicious prosecution, the question of probable cause is properly submitted to the jury, when about the facts tending to prove its existence there is a substantial dispute."

In *A. T. & S. F. Rld. Co. v. Watson,* 37 Kan. 773, 15 Pac. 877, it was said that if the facts are not in dispute, the question is primarily one for the court:

"But if the facts tending to establish the existence or want of probable cause are in dispute, then it is the duty of the court to submit the question to the jury."

And added the burden of proving want of probable cause was upon the plaintiff, who alleged it.

There are cases with varying results depending to some extent on the nature of the dispute, but where the question of probable cause rests on disputed facts it is the duty of the court to submit the question to the jury upon proper instructions. The question is primarily one for the court, but it was decided again in *McGarr v. Schnoor Cigar Co.,* 125 Kan. 760, 266 Pac. 73, that—

"With the conflict in the evidence which there is in this case on the question of probable cause and the companion question of malice, the trial court very properly referred both of them to the jury with instructions." (p. 766.)

As to the disputed facts it was held that—

"The court may properly conclude such matter is in dispute where there is

conflicting testimony, even if some of the isolated facts, standing alone, might be sufficient to make it a matter of law for the court." (Syl. ¶ 1.)

It is to be noted that the trial court carefully protected the interests of the defendant in its instructions. The jury were told:

"If the jury believe from the evidence that the defendant, when he instituted the prosecution complained.of, honestly believed that the plaintiff was guilty of an offense against the laws of this state, and that his belief was founded on a knowledge of circumstances tending to show such guilt, and would sufficiently induce, in the mind of an ordinarily prudent and reasonable man, the belief in such guilt, then such belief on the part of the defendant negatives the idea of the want of probable cause."

There was testimony that the defendant consulted a reputable lawyer, as well as the county attorney, before making the complaint and procuring the arrest. The jury were instructed that:

"If one acts in good faith on, and in reliance upon, the advice of the county attorney or other competent legal counsel, given upon a fair disclosure of all the facts, and in good faith follows such advice, it is a complete defense to an action for malicious prosecution."

And further along in the charge the jury were instructed that if he fairly presented the facts within his knowledge to counsel and instituted the action upon their advice, it would be a complete defense to the suit.

Another instruction of which there is complaint is where the court presented the issue as to whether a contract was made to give Baker 175 bushels of wheat to replace the volunteer wheat that could not be harvested, and that if the defendant did not agree to give the 175 bushels in place of the volunteer wheat, and the plaintiff took and sold that much wheat and refused to account for it, the jury were instructed that that would constitute reasonable grounds for the prosecution and the plaintiff could not recover, but—

' "On the contrary, however, in event you find and believe by a preponderance of the evidence that defendant had agreed with plaintiff that he was to and should have 175 bushels of wheat to take place of 175 bushels of volunteer wheat in the field in question, then and in such event you are instructed that no probable cause existed for the prosecution complained of in this case."

This instruction merely summarizes the facts in the main controversy between the parties, and we see no fault in it.

Counsel for the plaintiff refers to the fact that defendant undertook to commence the prosecution in Chase county, presenting the matter to the county attorney of that county, who upon interrogation of both parties, concluded not to direct a prosecution. After

that the defendant went to the county attorney of Lyon county and procured the issuance of the warrant and the arrest of the plaintiff. It is clear that the information with reference to the subsequent contract to give the 175 bushels of wheat in place of the volunteer wheat was withheld from the county attorney who advised the prosecution, and under the law the withholding of that information by the defendant, who is still insisting that no such contract ever was made, negatived the defense that he had begun the prosecution in good faith and with probable cause.

We have considered the instructions of the court, although it appears that defendant made no objection to them when they were given, and did not request that other or different instructions be given. The rule is that one who does not object to instructions or request that others of a different import be given is not in a position to complain of them in an appeal. (*State v. Jones,* 137 Kan. 273, 276, 20 P. 2d 514, and cases there cited.)

However, as the instructions dealt with the law of the case as to probable cause, we have examined the same and are of the opinion that defendant has no reason to complain of them or that anything in them approaches material error.

The judgment is affirmed.