**Gary D. PATTON, Plaintiff-Appellee Cross-Appellant,**

v.

**Albert E. GUYER, Martha Frances Guyer, Howard Fisher, d/b/a Fisher's I.G.A., Defendants-Appellants Cross-Appellees.**

**Nos. 478–69, 479–69.**

United States Court of Appeals, Tenth Circuit.

April 8, 1971.

---

Bradley Post, Wichita, Kan. (Michaud & Cranmer, Wichita, Kan., on the brief), for plaintiff-appellee-cross-appellant.

Ward E. Loyd and Daniel J. High, Garden City, Kan. (Calihan, Green, Calihan & High, Garden City, Kan., on the brief), for defendants-appellants-cross-appellees.

Before HILL and SETH, Circuit Judges, and DOYLE, District Judge.

WILLIAM E. DOYLE, District Judge.

This is an appeal from a judgment entered on a jury verdict against the defendants-appellants (in the amount of $11,000.00). The same jury also returned a verdict against a co-defendant, Ernest Craig, Jr., the then Sheriff of Kearny County, Kansas, in a lesser amount ($500.00 actual and $500.00 exemplary). Although defendant Craig has not appealed, the validity of the award against him is before us in relation to the propriety of "several" rather than "joint" verdicts under the circumstances presented. The case which commenced as false imprisonment was tried and submitted as a malicious prosecution case. It .stemmed from the confinement of an accused on a counterfeit check charge.

The plaintiff-appellee was arrested on or about December 7, 1966, in Scottsbluff, Nebraska. He signed an extradition waiver and was returned to Lakin, Kansas, where he was confined for a period of some 32 days. A complaint by the defendant, Mr. Guyer, led to the issuance of a warrant for plaintiff's arrest. The incident had its inception when a fictitious check in the amount of $36.43 was presented to Mrs. Guyer at the grocery store operated by her and her husband in partnership with defendant Fisher (who was not present at the time). The date of this was approximately November 26, 1966, although the check was dated November 22, 1966. This check was made payable to one Tommy Banks

and had been run through a check protector. It was a counter check in which one R. J. McComer appeared as the drawer. It was drawn on the Garden National Bank of Garden City, Kansas. The named payee on this check, one Tommy Banks, presented it at the Guyer store, but Mrs. Guyer mistakenly identified the *plaintiff* as the culprit. Four days previously, on November 22, 1966, plaintiff, who had been selling magazine subscriptions in Lakin, Kansas, had presented to Mrs. Guyer a genuine check in the amount of $4.00. This had been written by a Lakin resident on the same day (November 22).

After the fictitious check was returned marked "No account," Albert Guyer took it to the Sheriff who, after talking to the County Attorney, submitted a complaint to Albert Guyer which was signed and filed. Mr. Guyer said that the complaint was presented to him in blank. However, he also stated that he knew when he signed the complaint that someone would be arrested, although he did not know who it was. He had not previously seen the plaintiff. The Sheriff interviewed Mrs. Guyer who told him that the man who had presented the fictitious check was the same one for whom she had previously cashed the $4.00 check. Subsequently, the plaintiff, after having been arrested in Scottsbluff, Nebraska, on the mentioned warrant, was returned to Lakin, Kansas, where pictures were taken of him and shown to Mrs. Guyer. She said that she was unable to identify him from the pictures. However, she went to the jail and saw him through a one-way glass. She testified at the trial that she told the Sheriff that while it looked like the man she could not positively identify plaintiff as the man. Sheriff Craig gave a contrary version. His testimony was that she had

positively identified Patton. But that same day Mrs. Guyer met a friend at the bank and told the friend that she was uncertain and unable to make the identification.

A handwriting expert from the Kansas Bureau of Investigation determined initially that the handwriting on the $4.00 check was the same as that of the "Banks" check. It was not until some weeks later that an F.B.I. handwriting analysis revealed that the plaintiff had not endorsed the "Banks" check. By this time it became clear that there was indeed a Tommy Banks and that he rather than plaintiff had endorsed and passed the fictitious check. The true facts came through on a Thursday, but the authorities nevertheless kept plaintiff in confinement until the following Monday so as to allow them to report the developments to Mrs. Guyer.

The evidence at the trial also established that the plaintiff was 6' in height, whereas Tommy Banks was 5'9" and had tattoos on his arms.

During the period of plaintiff's confinement, Sheriff Craig received fliers pertaining to Tommy Banks. These came in in Mid-December. On January 6, 1969, the Kansas Bureau of Investigation handwriting analyst reported to the Sheriff that the F.B.I. had identified one of Banks' accomplices who had admitted to being in the Lakin area at the times in question, passing checks with a check protector. At this time, they also informed the Sheriff about the handwriting analysis showing that Banks had endorsed the check in question. At that point it became very clear that they were holding the wrong man.

Certain facts noted by the trial judge in his charge as stipulated and uncontested are summarized below.[1]

---

1. The defendants Martha Guyer and Albert Guyer operated and were part owners of Fisher's I.G.A. store in Lakin, Kearny County, Kansas. The defendant Howard Fisher was a part owner and one-half partner of the Guyers in the store.

The plaintiff Gary Patton was a resident of Oklahoma, but at the time was employed as a magazine salesman, and on November 22 was in Lakin, Kansas. On that day he presented to Fisher's I.G.A. store a $4.00 check drawn by one Della Barchet in the amount of $4.00. Mrs. Guyer cashed the check for plaintiff. A few days subsequent to this Mrs. Guyer cashed a check in the amount of $36.43

The defendant's suspicion was aroused from the fact that the plaintiff had made misstatements concerning his personal life to the drawer of the $4.00 check, Mrs. Barchet in the course of selling the magazine subscription.

The original complaint which described false imprisonment claims was filed on February 17, 1967. A motion to amend adding the second claim, that in malicious prosecution, was tendered March 18, 1968. The order authorizing the amendment was entered on May 23, 1968. The trial commenced some seven and one-half months later, on March 17, 1969.

Numerous alleged errors are urged. These revolve around the following matters.

1. The rulings of the trial judge with respect to the defense of disclosure to legal authorities, including the court's instruction on this subject.

2. The court's refusal to conclude as a matter of law the existence of probable cause, it being the position of defendants that probable cause existed as a matter of law. Complaint is also made in respect to the instruction given on this issue of probable cause.

3. The alleged insufficiency of the evidence to establish malice on the part of the defendants.

4. The alleged error in allowing the plaintiff to amend his complaint by adding a count in malicious prosecution to that which sounded in false imprisonment.

5. The alleged defective verdicts which, it is said, had the effect of apportioning damages as between joint tortfeasors.

6. The contention that the defendant Fisher being an inactive nonresident partner was not liable for any malicious prosecution which may have been perpetrated by the Guyers.

7. Miscellaneous contentions, excessiveness of damages and other instructions.

I.

DISCLOSURE TO LEGAL AUTHORITIES

The district court charge told the jury that the advice of the County Attorney as to the institution of a criminal proceeding sought and acted upon in good faith was a complete defense when all of the facts known to the defendant and all of the facts which he could learn by reasonable effort have been fully and truthfully given to such official.[2] The part of this that the appellants object to is that which charges defendant with knowledge of "facts which he could learn by reasonable effort."

It is said that this doctrine has been repudiated by the Supreme Court of Kansas. A lengthy and somewhat complex derivation of the Kansas Supreme Court decisions is presented starting with the case of Haines v. Atchison, T. & S. F. Railway Co., 108 Kan. 360, 195 P. 592, including Rowe v. Glen Elder State Bank,

presented to her by one who was later identified as Tommy Banks. This was the forged instument referred to above.

On December 7, 1966, a complaint signed by Albert E. Guyer was filed charging violation of the forgery statutes. A warrant was issued on the same day, and the plaintiff was arrested in Scottsbluff, Nebraska, on December 7, 1966. He was returned to Lakin and remained in the County Jail there until January 9, 1967. He was represented by court appointed counsel. All criminal charges were dismissed on January 9, 1967, by the County Attorney of Kearny County. At this time defendant was released from

imprisonment. The $36.43 check was a falsely made one and was issued by Tommy Banks.

2. The text of this charge is as follows:
"The advice of the County Attorney as to the institution of a criminal proceeding, sought and acted upon in good faith, is a complete defense for malicious prosecution, but this is only so when all of the facts known to the defendant or defendants and all of the facts of which he could learn by reasonable effort, that is, all the facts which the defendant could learn, or any of them, by reasonable effort, have been fully and truthfully given to such official."

1931, 132 Kan. 709, 297 P. 703, wherein it was stated:

> There is a similar line of cases where the prosecuting witness sought the advice of the county attorney instead of private counsel, and in the opinion and concurring opinions in the case of Haines v. [Atchison, T. & S. F.] Railway Co., 108 Kan. 360, 195 P. 592, 597, it was held, where the complaining witness has truthfully laid before the county attorney all the facts of which he has knowledge and the county attorney directs that a prosecution be instituted, the complaining witness will not be liable in damages. It was further held that "there is no authoritative declaration of this court approving the 'diligent effort' doctrine."

The Supreme Court of Kansas concluded in *Rowe* that inasmuch as the jury had answered an interrogatory that the defendant had fully and truthfully stated all facts to private attorneys and had been advised to bring the criminal action that he was entitled to a judgment notwithstanding the verdict. Other cases relied on are Messinger v. Fulton, 1953, 173 Kan. 851, 252 P.2d 904; Jones v. Zimmerman, 1957, 180 Kan. 701, 308 P.2d 96. Neither of the latter two decisions treat directly the specific issue, i. e. diligent effort. Both, of course, recognize that full and truthful disclosure is a defense.[3] There is a more recent holding of the Kansas court, that of Thompson v. General Finance Co., Inc., 205 Kan. 76, 468 P.2d 269 (1970), cited to us by counsel during arguments. There, as in the case at bar, the instruction given was almost identical with the Kansas pattern instruction.

In the recent *Thompson* opinion the scope and effect of *Haines* was clarified, the court holding that the doctrine applies only where the complaining witness has laid before the County Attorney all facts of which he has knowledge. It was noted in *Thompson* that there was evidence from which the jury might have found that the complaining witness had not truthfully disclosed the facts and, furthermore, it was noted that there was no evidence to show that the County Attorney recommended that the complaining witness sign the complaint. The court also observed that

> The appellants cite us to the *Haines* decision where the opinion for the court represented the view of only three members of the court. In their opinion the complaining witness was required to make a *reasonable effort* to ascertain all the facts. From this point the appellants seek to trace the rule or its variation through many Kansas cases.

■ The court's conclusion was that there was no necessity to decide whether it was error to give the "reasonable effort" instruction because the defendants' objection to the instruction as a whole had not included this phase of it. Having failed to state the objection the instruction became the law of the case. Under the Kansas statute, KSA 60–251, a party may not assign as error the giving of an instruction unless he objects to it and unless the instruction is clearly erroneous. In this case also defendants failed to object to the instruction under consideration. A more significant distinguishing factor here is that there was not a disclosure to the County Attorney in the usual sense. All that we find here is the delivery of the counterfeit check to the Sheriff and the Sheriff's communicating with the County Attorney who in turn prepared and filed a complaint. The disclosure included a description of the plaintiff as the guilty person. This was not a presentation of

---

3. The emphasis in this entire line of decisions is on truthful disclosure as a complete defense. The decisions do not attempt to deal with facts in which there exists a dispute as to whether a truthful disclosure to the County Attorney or to an attorney was made, but here legal advice as to whether a criminal offense had been committed was not an element. The only question was whether the plaintiff had perpetrated the crime. The County Attorney's advice as to this would not be significant, and, in fact, the instruction was somewhat irrelevant.

facts followed by advice of the County Attorney as to sufficiency. Other than that we have the evidence that Mrs. Guyer positively identified plaintiff, even though there may have existed some doubt in her own mind whether he was the culprit.

Our Rule 51 like the mentioned Kansas statute prohibits the assignment as error of the giving or failure to give an instruction unless the party objects to it before the jury retires and states distinctly the grounds for his objection.

■ From a reading of the *Thompson* ruling the language of the *Haines* case assumes something less than controlling importance. Also, there was a fact issue here, there was a failure to object. Reversal on this ground would not be justified.

## II.

## THE PROBABLE CAUSE QUESTION

The trial court concluded that there was a dispute of fact as to the existence of probable cause and submitted this question to the jury, instructing the jurors that:

> Probable cause for the instituting of a criminal proceeding exists when there are reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious or prudent man to believe that the party committed the act of which complaint is made. In determining the issue of probable cause, you should consider only the facts and circumstances that were apparent to the defendant or defendants in this action at the time the original proceedings were instituted.

Following the completion of the charge and the objections of counsel, the court added the words "or should have been apparent" following the word "apparent."

Counsel for the defendants argue that existence or nonexistence of probable cause is a question of law which is to be determined by the court; that under the circumstances of this case it was clearly a matter of law, there being no bona fide dispute of fact as to the existence of probable cause.

■ The Kansas cases hold that the malice issue is a matter of law only where the facts are undisputed. Where, as in the case at bar, there is a conflict as to existence or want of existence of probable cause, it is the duty of the trial court to submit such question or questions to the jury with appropriate instructions, defining the law applicable to the rights of the parties under the evidence. Messinger v. Fulton, 173 Kan. 851, 252 P.2d 904, and see also the recent case of Thompson v. General Finance Co., Inc., 205 Kan. 76, 468 P.2d 269 (1970).[4]

■ The court correctly charged the jury that the burden was on the plaintiff to establish that the defendants acted without probable cause and so in effect instructed the jury that the plaintiff was obligated to prove that there were not reasonable grounds for suspicions supported by circumstances sufficient to warrant a prudent man in believing that the party committed the act of which complaint was made.

■ The submission of the issue was justified. The Guyers did not merely deliver the check to the Sheriff. Had they done so without accusing any particular person, the evidence would have been insufficient to establish a fact issue as to the want of probable cause. But as noted, Mrs. Guyer gave the Sheriff to understand that the person who passed the fictitious check was the same individual who had passed the $4.00 check, and this particular suspect was readily accessible through the magazine

4. In *Messinger* the court cited the following cases in support of the above proposition: Bell v. Matthews, 37 Kan. 686, 16 P. 97; Atchison, T. & S. F. R. Co. v. Watson, 37 Kan. 773, 15 P. 877; Mc-Garr v. E. V. Schnoor Cigar Co., 125 Kan. 760, 266 P. 73; Baker v. Larson, 138 Kan. 200, 25 P.2d 375; Walker v. Smay, 108 Kan. 496, 196 P. 231; Barnes v. Danner, 169 Kan. 32, 216 P.2d 804.

company. She did this notwithstanding that some days had elapsed between the cashing of the two checks, and the two men were not shown to have resembled one another. The plaintiff was three inches taller than Banks, and they differed in other respects. After having leveled the accusation at Patton, Mrs. Guyer, according to the testimony of the Sheriff at least, identified him at the jail and again according to some evidence did so even though she had some doubts as to whether he was the man. Therefore, considering the gravity of the consequences from a wrong identification the jury could have concluded, consistent with the evidence, that the violation of duty was gross.

In summary, then, we see no error in the decision of the court to submit the issue to the jury; nor do we perceive error in the instruction given as the same was amended after completion of the charge.[5]

### III.

### SUFFICIENCY OF EVIDENCE AS TO MALICE

The next question is whether there was sufficient evidence of malice. Appellants do not question the accuracy or validity of the instruction given on this subject. The court said that the burden was on the plaintiff to establish the existence of malice, either malice in the ill will sense or wanton disregard for the rights of others. It is said though that there was a lack of evidence to establish a wanton disregard for the rights of the plaintiff.

■ The court instructed the jury they could infer the existence of malice from a want of probable cause. Quite apart from this, the jury, as previously noted, could conclude from the baseless accusation and the subsequent identification that the defendant, Mrs. Guyer, acted with a reckless disregard for the rights of the plaintiff.

### IV.

### THE AMENDMENT OF THE COMPLAINT

■ We see no error in the action of the court in allowing the plaintiff to amend his pleadings by adding the count in malicious prosecution. Defendants-appellants argue that they were prejudiced by this. There is invariably some practical prejudice resulting from an amendment, but this is not the test for refusal of an amendment. In this instance the amendment was authorized several months prior to trial. The defendants were not prejudiced in terms of preparing their defense to the amendment. There was practical prejudice also arising from the fact that damages were awarded on the amended count. Had there been no amendment the defendants might have prevailed. This is not the test. The inquiry again is whether the allowing of the amendment produced a grave injustice to the defendants. In our view it is more likely that substantial justice would have suffered had the motion to amend been denied.

■ Rule 15 grants a broad discretion to allow pleadings to be amended at any stage, and where, as here, the claim arises out of the same transaction or nucleus described originally, the amendment relates back to the date of filing the complaint. We see no error in allowing the amendment and in relating it back to the date of original filing in accordance with Rule 15(c) of the Rules of Civil Procedure.

### V.

### THE ALLEGED DEFECTIVE VERDICTS

For the following reasons we have determined that the verdicts are valid and are not to be disturbed.

*First,* the case, including the verdicts, was submitted to the jury in a manner which allowed individual verdicts. This

---

5. Merely because the case is one of identification, it does not follow that it fails as a malicious prosecution case.

action of the court was not challenged at the trial.

*Second,* although the jury was not instructed that it could return individual verdicts in different amounts, it was not told that it could not.

*Third,* the evidence was different as to the several defendants justifying different results on the element of malice and probable cause as between the appellants here and Sheriff Craig. The jury could, consistent with the evidence, conclude that Craig acted on the information of Mrs. Guyer as to identity of the accused and thereby acted with probable cause, there being no question but that an offense was committed; that he did not become aware of the truth as to identity of the accused until he received official word that there was a real Tommy Banks. The jury could have further concluded that Craig was guilty of malice in continuing the confinement, whereas the Guyers' and Fisher's responsibility ceased; that Craig's action intervened as the responsible cause of the latter confinement.

*Fourth,* it does not appear that the jury was *apportioning* damages, but rather was determining individual responsibility based on acts and transactions applicable to the individual defendants.

We recognize that there cannot be apportionment of damages among "joint tortfeasors," and also that this rule is applicable to malicious prosecution cases. 34 Am.Jur. 761 § 94. It is also clear that the right to maintain an action in malicious prosecution is a *joint* and several one. The right is joint, and the defendants are joint tortfeasors only if they acted in concert to achieve a result. If they were acting individually, the rule against apportionment would not apply, and it would appear that the jury believed that Craig was not acting in concert with the other defendants.

In the case at bar the suit was apparently brought on the basis of defendants being joint tortfeasors. However, the evidence developed differently and the verdicts were submitted in such a way as to permit the jury to determine the liability of each defendant, and the jury as noted above was not told that its verdict must be in the same amount as to each of the defendants.

In Kansas, as in most other jurisdictions, even though a verdict does attempt to apportion damages as between the joint tortfeasors, it is ordinarily upheld even though it is irregular, if the irregularity can be cured. See Hall v. Kansas City, 1923, 112 Kan. 752, 212 P. 875, in which the Supreme Court of Kansas held that following an attempted apportionment the court may receive the verdict and amend it by striking out a surplusage after the finding of joint liability. There, the court said:

> Where a several judgment is rendered against each defendant on such a verdict it is not necessary to enter a reversal because of the erroneous form in which it was entered, since it can be corrected by a direction of either the appellate or the trial court making the judgment conform to the established rule in such cases.

See also Schwab v. Nordstrom, 1933, 138 Kan. 497, 27 P.2d 242 as an example of a case in which there were irregular verdicts which were construed so as to give effect to them.

In Siebrand v. Gossnell, 9 Cir., 234 F. 2d 81, it was held that a reviewing court must seek support of the judgment appealed from upon any grounds disclosed in the record, taking a view of the evidence which is most favorable to the prevailing party.

In the case at bar the jury seemed to, as previously noted, treat the injury to the plaintiff as two successive injuries judging from the fact that it found against the Guyers and Fisher on a joint basis and against Craig on a separate basis. Viewed in this manner, the joint tortfeasor rule does not even come into play.

Defendants would have us strike out the judgment against the Guyers and Fisher and apply instead the $500.00 ver-

dict against Craig, that is, the lesser one, since this is one alternative which has at times been followed in attempting to cure a defective verdict. Such a cure would be wholly inappropriate here.

Finally, we are unable to see that the defendants-appellants before us are in any way prejudiced by the several and different verdicts, bearing in mind that Sheriff Craig has not appealed and is not, therefore, objecting.

## VI.

## NONLIABILITY OF FISHER AS A PARTNER

Fisher was shown by the evidence to reside some 50 miles from Lakin, Kansas, and he did not participate in day-to-day activities of the partnership. He met with Mr. Guyer periodically every two to four weeks to discuss partnership problems. On these occasions he examined the accounts, including short checks which had been given.

Fisher did not testify at the trial. The only inculpatory evidence was that of Mr. Guyer, a partner. The latter testified that he had authority to do whatever was necessary in order to collect bad checks. Undoubtedly the Guyers had full authorization to act in furtherance of the partnership's interest, including the collection of bad checks.[6] On the other hand, the record is devoid of evidence to establish that Fisher knew about this incident or that he authorized the filing of criminal charges.

While there is some indication that the delivery of the check in question was related to collection, the evidence does not establish it.[7] Guyer said that he took the check to the Sheriff only because a check protector was used, and thus he thought that it was a criminal case. The authorities require more than this. In order for the acts constituting malicious prosecution to have been binding on Fisher it would have to have appeared that the particular incident was consented to or that the active partners were carrying out the partnership business—within the scope of authority granted. The cases do not reveal a liberality in holding a partner liable for malicious prosecution, since criminal filings are not ordinary partnership business.[8]

---

6. However, it is highly questionable that the scope of the acting partner's authority can be established solely by his own testimony.

7. The only evidence in the record from which it may be inferred that the prosecution was instituted for partnership business purposes is the following testimony by Mr. Guyer:

Q. And you, as manager of the store, it was actually your business to see, or to try to see that all the people paid their bills, and that you collect any "no account" checks, wasn't that a part of your function as manager? A. Yes, sir.

Q. Mr. Fisher did know that you, as manager of the store, would do whatever was necessary to try to collect the bad checks and the bad accounts, didn't he? A. Yes.

Q. And whatever method you used, he was agreeable for you to use whatever method you thought necessary, isn't that true? A. That is right.

There is no evidence that this particular prosecution was instituted in order to collect a bad check. No pattern of using the County Attorney as a collector was shown. Mr. Guyer testified that he had only taken two no account checks to the Sheriff in the fifteen years during which he operated the grocery store.

8. *See* Noblett v. Bartsch, 31 Wash. 24, 71 P. 551 (1903); Page v. Citizens' Banking Co., 111 Ga. 73, 36 S.E. 418, 51 L.R.A. 463 (1900); Farrell v. Friedlander, 63 Hun. 254, 18 N.Y.S. 215 (1892); Gilbert v. Emmons, 42 Ill. 143, 89 Am.Dec. 412 (1866). *But see* Mansour v. Mobley, 96 Ga.App. 812, 101 S.E. 2d 786 (1957). The general rule, as stated in 68 C.J.S. Partnership § 168 (1950) is that

[a] prosecution instituted by a partner for an alleged wrong relating to the property of the firm cannot impose any liability for malicious prosecution on another partner who did not assent to or have any knowledge of the prosecution at its commencement, especially if he repudiates it as soon as known to him, unless committed in the course, and for

## VII.

The remaining defendants have made a plea for a remittitur contending that the verdict is excessive. It is true that the amount is on the high side, but in view of the fact that a baseless charge was filed against the plaintiff, that he was extradited, and that he was incarcerated for a total period of 32 days, it cannot be said that the amount is so shocking that it calls for the extreme action of directing the remittitur of a portion of it.

We have examined the other points urged by defendants, including the demand that the defendant Mrs. Guyer be dismissed, and the alleged insufficiency of other instructions, and we conclude that all of these contentions are without merit.

The judgment is affirmed in all respects except the judgment against Fisher. As to this, the cause is reversed, and it is directed that the claim be dismissed.

the purpose, of transacting the partnership business.

*Compare* Restatement (Second) of Agency § 246 (1957).