AMBROSIO MATOS CANTALÍS, on behalf of his minor child, VíC-TOR ENRIQUE MATOS, Plaintiff and Appellee, v. PORTO RICO RAILWAY, LIGHT & POWER Co., Defendant and Appellant.

No. 8128. Argued November 7, 1940.—Decided February 28, 1941.

*Brown, González & Newson* and *E. Córdova Díaz,* for appellant.
*Eduardo Urrutia Martorell,* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

The high tension wires which the defendant uses to supply electric light pass over Buena Vista Street, in the Ward Santurce and at a minimum height of 26 feet 4 inches above the street level. Through its wires, which are not insulated, passes an electric current of 2,300 volts, without the defendant having taken any precaution to prevent injury to persons or property, other than the height at which it placed its power lines. Without our knowing how, a wire similar in thickness to that used to hang washing came in contact at one of its extremities with a high tension wire, its other end hanging very near the pavement. On the 23 of October, 1936, Víctor Enrique Matos, a boy 12 years of age who was walking down said street, came in contact with the wire hanging from defendant's line, receiving as the result the burns to which we will refer further on. Describing what happened to him, the injured boy testified as follows:

"I was running an errand, to then go to school, and when I passed underneath the electric light wires, I felt something which

seized me and struck me a blow. When I tried to separate it from me with this hand, I remained stuck. I then began to struggle with it in order to take it away but could not do it, and then I lost consciousness. I do not know anything more." (T. of E. pp. 99–100.)

The witness María Nieves Cáceres, who saw the accident, describes it thus:

"I saw that something fell on the child's back; he tried to remove it but he fell, and his neck was smoking and I tried to help him...a blue light came out through his fingers. When I drew near to the child, I saw a string that was hanging from above and was turning from side to side...The child had already fallen, the wire had already struck him down, he was lying unconscious on the ground. When that thing hit him on the back, the child turned and tried to remove it but he fell on his back." (T. of E. pp. 20–21.)

Dr. Asenio Comas, who assisted the child immediately after the accident, testified with respect to the wounds received by the latter, that he showed extensive second degree burns in the thorax, back, right arm, left forearm, left axillary region, left thigh and in both heels; that he further showed third degree burns in the left hand, with a partial amputation of the index and middle fingers of said hand; that he gave him the required treatment for such cases and seeing that the hand did not get better, on the 11th of November he had to amputate the rest of the middle finger and another phalanx of the index finger; that he was in the hospital until the 4th of December, 1936. In accordance with the evidence, the child is left handed and according to Dr. Comas, he remains with an 85 or 90 per cent incapacity in said hand. (T. of E. 43–45.)

The trial of this case ended on the 16th of January, 1939, and three days later, plaintiff's attorney filed a motion duly notified to the adverse party, to which he accompanied a certified copy of an ordinance approved by the Municipal Council of San Juan on the 6th of August, 1908, entitled "Ordi-

nance regulating electric installations in the city", the second Section of which provides:

"Section 2.—Exterior lines.—All the lines which carry electric current within the city must be made of copper wire, insulated either with rubber or a material called '*Weatherproof*', as well as the wires used to join the same to the insulators. The thickness of this covering must be in accordance with the voltage of the line. . ."

In the above mentioned motion, plaintiff's attorney requested the court to take judicial notice of said ordinance and if it felt that it could not do this, to reopen the case in order to offer additional evidence.

The court did not render any decision nor did the plaintiff do anything with respect to this motion and judgment for plaintiff was rendered on the 15th of the following March, granting him the sum of $1,200 plus the costs of the suit and $200 for attorney's fees. Neither in the judgment nor in the opinion of the court is the slightest reference made to the above mentioned ordinance. In other words, the trial court ignored said document, and this the appellant itself admits.

In order to prevent us from taking judicial notice of said ordinance, appellant, after making its oral argument, filed in this Court a supplemental brief setting forth the reasons why we should not take into consideration said ordinance for the purpose of deciding this appeal.

As we are dealing with a suit filed originally in the district court, it is clear that said court lacked the power to take judicial notice of this municipal ordinance. *The People* v. *Suárez*, 23 P.R.R. 226; *The People* v. *Nochera*, 23 P.R.R. 561; *People* v. *Garzot*, 24 P.R.R. 215, and *People* v. *Solís*, 56 P.R.R. 269. Since the district court could not take judicial notice of the above mentioned ordinance, this Court cannot do so in considering the case on appeal. As the above mentioned ordinance was not admitted in evidence, since the hearing was never set for its admission, although

requested in the motion to which we have referred, we will have to ignore it as far as this appeal is concerned.

■ After deciding this previous legal question in the manner set out above we will now proceed to consider the appeal on its merits.

Did the defendant company have the duty of maintaining insulated the high tension wires which passed above Buena Vista Street in the above mentioned condition, that is, at a minimum height of 26 feet and 4 inches over the street level? At any event, was the failure to insulate the wires the proximate cause of the accident? Those are, in accordance with the evidence and the pleadings, the questions to be decided in this appeal.

In many of the cases which we have consulted in our study of this suit, it is affirmed that the transmission wire of a high tension electric current is one of the most dangerous things known to man. It is not only dangerous because it is capable of inflicting death at the slightest touch, but also because of the circumstance that it is impossible to most persons to discover at a given moment whether a high tension current is passing through a wire or whether said wire is harmless. That is the reason why the jurisprudence requires those who devote themselves to generating and distributing such a dangerous element to use the highest degree of care in order to avoid causing harm. But in spite of this high degree of care required from them, the jurisprudence also maintains that the persons or concerns devoted to this business do not have the liability of an insurer. In other words, that they are not liable in any case in which damage is caused, unless the damage was brought about through its fault or negligence in not using a degree of care and diligence in proportion to the danger which the use of that element carries with it. See the annotation in 31 L.R.A. 566, entitled: ''Liability for injuries by electric wires in highways,'' supplemented by the more recent one in 22 L.R.A.

(N. S.) 1169, under the title of "Liability for injuries or death of traveler coming in contact with electric wire in highway."

■ Since transmission wires carrying a high tension current are not dangerous unless they come in contact with human beings, the decisions of courts require that they be insulated only when there is a probability that there may be such a contact. In 9 R.C.L. 1213, Section 21, the rule is set forth in the following terms:

"*Insulation at Particular Points or Places.*—It is only reasonable that the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires, and the law does not compel electric companies to insulate their wires everywhere, but only at places where people may go for work, business, or pleasure, that is, where they may reasonably be expected to go."

We will illustrate the doctrine set out above with various cases in which the courts have applied it.

In *Wetherby* v. *Twin State Gas & Electric Co.,* 25 L.R.A. (N. S.) (Vt. 1910), the defendant company had installed three transmission wires of a high tension current along an iron bridge. The wires were, the nearest of them, about two feet three inches from the outside of the bridge. Wooden arms projected from the cross beams of the bridge in two or three places and upon these arms there were placed crystal insulators, through which wires passed at a distance of 1½ feet one from the other. The wires were defectively covered. A boy climbed along the side of the bridge and while he was playing with some other boys, one of his feet came in contact with the nearest wire, as the result of which he died almost instantly. Although some evidence was offered tending to show that boys and other persons used to climb along the side of the bridge for the purpose of fishing, there was nothing in the record to show that the company or its employees knew of the fact that the boys used to climb near the place

where the wires were. The trial court rendered judgment for plaintiffs. On appeal, the judgment was reversed, the Supreme Court expressing itself as follows:

"In any view of the evidence, the position and doings of the intestate at the time of the accident were not incidental to or related to the use of the bridge for passing and repassing on foot. (Page 1223.)

"  *        *        *        *        *        *        *

"There was nothing in the wires or in the manner in which they were strung to invite or allure children or others into a position where the current of electricity carried over the wires would be dangerous to them, and the exercise of the high degree of care and prudence required of the defendant in maintaining its lines would not have suggested the likelihood of a contact with the wires by anyone. Such an occurrence could not have been reasonably anticipated. (Page 1224.)

"  *        *        *        *        *        *        *

"The business of transmitting electricity, while indispensable to society, must be conducted with a very high regard for the safety of the public, and the thoughtlessness, inexperience, lack of judgment, and misjudgment of children of tender years must be taken into account; but the courts cannot make electric companies insurers of the safety of children, more than of others, nor require of such companies, in the circumstances of their business, a degree of care, prudence, and foresight beyond that which it is given to careful and prudent men to have and exercise in such or like circumstances." (Page 1226.)

In the case of *Gallaway* v. *Central Georgia Power Co.*, 160 S. E. 703 (Ga., 1931), the court said:

"Although an electric company may be chargeable with knowledge that children play along the streets of a city, it cannot reasonably be anticipated that children, while at play in the streets of the city, will, by throwing a loose wire, make contact with the company's uninsulated wires strung over a street at a height of 20 feet only. It follows that the erection and maintenance by an electric company of highly charged uninsulated wires over the street of a city erected at a height of 20 feet, in the absence of any legal duty placed upon the company to insulate its wires or to maintain them at a higher distance from the ground, is not negligence as respects a child

playing in the street, who in play, accidentally throws a small wire attached to a spool over one of the company's wires and thereby receives an electric shock which injures him. (Authorities.)''

In the case of *Bunten* v. *Eastern Minnesota Power Co.*, 228 N. W. 332 (Minn., 1929), after setting forth the above mentioned rule to the effect that an electric power company is not required to insulate its high tension wires in those places where there is no possibility of their coming in contact with persons, the court cites the following cases illustrating said rule:

''It has also been held negligent to permit such wires to pass through the branches of trees, especially where the trees are near streets or near grounds upon which children play, as it ought to have been anticipated that the trees might be climbed. (Authorities.) (Page 334.)

'' *        *        *        *        *        *        *

''It is the duty of an electric company which maintains high voltage wires at places where people have the right to be, and *are likely to come in contact with them,* to guard against danger from the wires by effectively insulating them or by providing other sufficient safeguards.'' (Page 334.)

In the case of *Scott* v. *Pacific Power & Light Co.*, et al., 35 P. (2d) 749 (Wash. 1934), the plaintiff, employed by a theater whose roof was used for the exhibition of advertisements, had to climb to said roof to remove an iron post from which several advertisements were hanging, and while he was doing this work, the post came in contact with a high tension wire belonging to the defendant company, which wire was laid out horizontally at a distance of 10 or 20 inches from the building, certain burns being inflicted as a result to the plaintiff. The appellate court affirmed the judgment which had been rendered in favor of the plaintiff, citing among other authorities, the following paragraph from Curtis' work ''Law of Electricity'':

''An electric company must expect that persons will sometimes go upon the roof of buildings for pleasure and business, and it must

therefore exercise due care to see that its electric wires over or near to the roof are properly insulated so that injury will not result to a person lawfully upon the roof. Thus, if a workman employed to repair the roof or to do other work on or near the roof comes in contact with a defectively insulated electric wire and receives an injurious shock of electricity, the company will generally be required to respond in damages." Cited work, section 515, page 776.

In *Brooks* v. *Consolidated Gas Co.*, 70 N. J. Law 211, 57 Atl. 396, 398, while holding the company liable for the death of a person who came in contact with wires defectively insulated while he was painting the gutters of a porch, the court said:

"When it placed its converter in the position indicated, it was bound to consider and foresee the possibility and the probability of some one, using the balcony for pleasure, or for working thereon, coming in contact with the wires and receiving injury thereby, and to take such precautions as might be reasonably taken against such results. This duty it owed to every person lawfully using the balcony. Whether the company did take such precautions and exercise such care as the circumstances demanded was plainly a question for the jury."

In the case at bar two electrical engineers testified for the defendant. Mr. F. del Valle, who built the line in question in 1935, a year before the accident, and Mr. Cosme, who examined and inspected it sometime before the date in which the trial was held. From the testimony of both witnesses it is apparent that the line was built and preserved in accordance with the latest improvements of science. As the wires were laid out at a minimum distance of 26 feet 4 inches from the street pavement it is clear that there does not exist any possibility of the persons who use said public road either on foot or in a vehicle, coming in contact with the high tension lines. Therefore, it was not necessary, within the circumstances of this case, that the wires should be insulated in order to avoid inflicting injuries upon the persons who used said public road, since the distance from the ground at which they were installed was in fact an effective insulation.

Appellee maintains that this Court in the case of *Rosado* v. *Ponce Railway & L. Co.*, 18 P.R.R. 593, has decided that it is the duty of electric power companies to insulate completely all wires laid out above city streets. In effect, this Court stated in said case:

"Moreover, as decided in a case arising in Louisiana, it is the absolute duty of an electric light company, conveying electricity by overhead wires, strung through the streets of a city, to keep its wires constantly insulated, so as to be prepared to guard against the effect of objects coming in contact with them regardless of the facts and causes which may bring about the contact. *Herbert* v. *Lake Charles Ice, Light & Waterworks* Co., 11 La. 522, citing *Fitzgerald* v. *Edison E. I. Co.*, 200 Pa. St., 540, 50 Atl. 161, 86 Am. St. Rep. 732, and other cases. See also *McLaughlin* v. *L. E. L. Co.*, 34 L.R.A. 812, and *Haynes* v. *Raleigh Gas Co.*, 26 L.R.A. 813."

In the *Herbert* case, *supra*, which was the ground for the above copied paragraph, it was proven that the wires of the defendant company had been decayed for some time and that on the night of the accident the wind was blowing and one of the wires of the telephone company, which was also in bad condition, the defendant company knowing this, came in contact with one of the wires of the latter, breaking it. The piece of wire left hanging as the result of the breakage came in contact with Herbert and caused his death. These facts proved that the defendant company was negligent in not preserving its wires in the condition which would enable them to resist the shock of an ordinary wind, and in not taking the necessary precautions in order to prevent its wires from coming in contact with those of the telephone company.

In the *Rosado* case, the facts were different from those of the *Herbert* case. The former case had to do with secondary wires which descended from the distribution lines to the porch of a house. These secondary wires were defectively insulated, since in accordance with the evidence the cover which they originally had had disappeared in some places. In accordance with these circumstances, and as secondary

wires which descended on a porch of a house were involved, it was the duty of the company to maintain them completely insulated in order to prevent injuring persons who would have to come near said wires, for purposes of repairing them or for any other reason, *Brooks* v. *Consolidated Gas Co., supra.*

Subsequently, the Supreme Court of Louisiana, which decided the *Herbert* case, *supra,* clarified its position in the cases, among others, of *Bujol* v. *Gulf States Utilities Co.,* 147 So. 545 (1933), and *Freibert* v. *Sewerage & Water Board of New Orleans,* 159 So. 767 (1935), in which cases it followed the general rule that it is only necessary to insulate wires in those places in which one may reasonably expect to find persons for purposes of pleasure or business, in order to protect them.

In the *McLaughlin* case, *supra,* cited in the *Rosado* case, there was also the duty of insulating the wires since the latter passed near a building and the plaintiff came in contact with them while painting the building. *Parsons* v. *Appalachian Electric Power Co.,* 100 A.L.R. 615 (W. Va., 1934).

In the case of *Haynes* v. *Raleigh Gas Co.,* 26 L.R.A. 810, the accident was caused by a high tension wire which broke and hung over the sidewalk at the very moment when a child was passing under it, the child coming in contact with said wire. The court held that since the wire which caused the death of the child belonged to the company, the doctrine of *res ipsa loquitur* should be applied, and the defendant had to prove that the breakage and falling of the wire was not caused by its guilt or negligence. The court said:

"Does the expression *'res ipsa loquitur'* apply to the state of facts set out above, and do those facts make out a prima facie case of negligence against the defendant, and cast upon it the burden of showing that it was not negligent? Argument and authority are not needed to show that those who use the streets of a city, by permission of those who have power to grant such privilege, for purposes of private gain, owe to persons upon such streets the duty

of so conducting their business as not to injure them. To speak particularly of the matter now under consideration, the defendant company, using the streets of the city of Raleigh for its purposes, as it was allowed to do, owed to the deceased the duty of keeping out of his way, as he went about his business and to his home, all its wires, and especially the duty of preventing his exposure to contact with any wire placed in the streets by it that carried a current of electricity. It was the duty of the defendant to keep the highway along which it put its poles and wires substantially in the same condition as to convenience and safety as they were in before it constructed its lines along the streets. Negligence has been said to be a failure of duty. Proof that there was a 'live' wire (carrying a deadly current) down in the highway surely raised a presumption that some one had failed in his duty to the public. When to this was added proof that this death-carrying wire was put above the street by the defendant, and was its property, and under the management and control of its servants, and that by contact with that wire the deceased, having a right to be on the street, was killed, a complete *prima facie case* of negligence was made out, and the burden was cast upon the defendant to show that this live wire was in the street through no fault of its servants and agents.'' (Page 812.)

The case of *Orta* v. *Porto Rico Railway, Lt. & P. Co.*, 36 P.R.R. 668, is not applicable to the instant case. The former case deals with a high tension wire which belonged to the defendant company and was in bad condition, as the result of which it broke and came in contact with a child, causing his death. The court applied the doctrine of *res ipsa loquitur* and as the defendant did not comply with its duty of explaining why the wire fell it was held liable for the damage caused.

If the wire which caused the damage in the case at bar had been a part of the defendant's lines or had been placed there by its agents or employees, we would not hesitate, in accordance with the decisions above cited, to apply the doctrine of *res ipsa loquitur,* that is, we would apply the *juris tantum* presumption that the accident had been caused by the defendant's negligence. In this case however, the wire

was not a part of the defendant's lines, and the evidence does not show that it had been placed there by its agents or employees. This leads us to consider the second question raised: Was the defendant's negligence the proximate cause of the accident? In order to decide this problem correctly, we must first answer these two questions: Could the defendant reasonably foresee that some one would throw a wire which would come in contact with its lines, which are situated at a minimum height of 26 feet and 4 inches over the street? Did the defendant have actual or constructive knowledge of the existence of this wire over its lines, in time to have it removed and thus prevent the accident?

In the case of *Colón* v. *Shell Co.*, 55 P.R.R. 575, 600, we said, with reference to the intervention of an independent agent as the proximate cause of an accident:

"To uphold the theory that the damages caused to another are the result of the intervention of an independent agent, it is a requisite *sine qua non* that at the time the force which caused the damages was loosened, the independent agent had no existence or if it did exist, that it be ignored by the defendant and that he could not reasonably foresee it, since if it existed, and was known by the defendant, or even though not known could have reasonably foreseen, then the supposed independent agent is no more nor less than a fact or circumstance that the defendant should have had in mind in acting or refusing to act in the manner that he did."

It is evident that when the defendant company installed its lines over Buena Vista Street, without insulating its wires, the wire in question did not exist. Neither could it foresee that somebody would throw it over its lines. Therefore, in accordance with the rule which we have just stated, it must be concluded that the accident suffered by the plaintiff in this case is the result of the intervention of an independent agent.

In the case of *Watral's Adm'r.* v. *Appalachian Power Co.*, 115 S. W. (2d) 372 (1938, Ky.), the electrical power company placed high tension wires on 13 foot posts along or near a

public road, adjacent to the house of Kornelia Watral, in a thickly settled section of one of the mining camps owned by the defendant. The wires were not insulated. A child was flying a kite with a copper wire, which came in contact with the high tension wires, the child receiving as the result some burns and a shock. His mother, who tried to help him, also received a severe shock, falling to the ground seriously burnt. Her outcries attracted the attention of her neighbor Kornelia Watral, who tried to help her and while doing so was electrocuted. It was alleged in the amended complaint that the neighborhood children used to play and fly kites in that place, underneath and around the wires which caused the injuries and that the employees of the company knew of this fact. The lower court granted a demurrer for lack of facts constituting a cause of action, and rendered judgment dismissing the complaint. The Supreme Court, affirming said judgment, said:

"The question presented is: Was it the duty of the defendants to anticipate that a boy would fly a kite attached to a copper wire which might come in contact with the uninsulated electric wire?

"The general rule followed by this and practically all other courts is that persons or corporations maintaining and operating wires charged with a high and dangerous voltage of electricity must exercise the highest degree of care for the protection of members of the public in all places where such persons have a right to be. (Authorities.) While those engaged in the business of producing and transmitting electric current must use the utmost care and skill to prevent injury to any person who is in a place where he has a right to be, yet they are not insurers against all injuries which may be caused by the operation of their business." (Page 374.)

Attention is called in the above cited case to the fact that the wires location at a height of only 13 feet was not the cause of the accident, since they were out of the children's reach, and the accident would have happened just the same even if the wires had been 25 or 50 feet high. Neither was the decision of the case affected by the fact that the employ-

ees of the company knew that children used to play there as it was not proven that they had ever used a copper wire in their kites, and on the contrary, what they used was string, which is a nonconductor of electricity. The opinion in this case ends with the following paragraph:

"One is bound to anticipate only the reasonable and natural consequences of his conduct, and is not required to guard against that which a reasonably prudent person, under the circumstances, would not anticipate as likely to happen. We find no allegations of fact in the petition, as amended, authorizing the conclusion that appellees should, in the exercise of even a high degree of care, have anticipated that any child would fly a kite with a copper wire and receive injuries resulting from the copper wire striking the power line." (Page 375.)

In the case of *Jones* v. *Union Ry. Co.* 50 Misc. 651, 98 N. Y. Supp. 757, some one wilfully threw a piece of wire over those of the defendant, said wire remaining hanging from that of the trolley. There was no evidence as to the period of time during which the wire had been in that position, except the testimony of a motorman employed by the defendant who declared that he passed through that place eight minutes before the accident and did not see it. Said wire, thus charged with electricity, came in contact with a horse and killed it. It was held that the evidence was not sufficient to have the case submitted to the jury, and the defendant was acquitted of all liability.

In the case of *Luehrmann* v. *Laclede Gaslight Co.,* 127 Mo. App. 213, 104 S. W. 1128, it was held that an electric power company is not liable for an accident caused by a wire thrown by some boys over its lines a few moments before a person came in contact with said wires. The court said that to hold the defendant liable in such circumstances would be equivalent practically to considering the company as the insurer of the life and limbs of all persons against injuries caused by the illegal act of any person who tampers with the company's lines.

In this case of *Brubaker* v. *Kansas City Electric Light Co.*, 130 Mo. App. 439, 110 S.W 12, it was held that an electric power company is not liable for the damages caused by the illegal or negligent act of trespassers, in hanging a wire from one of those belonging to the company, if said wire (the one hung by the trespassers) had been there for so short a time that the company in the exercise of the highest degree of care, could not have discovered and removed it.

From the evidence it does not appear for how long a time before the accident this wire was hanging from the company's lines. A witness for the plaintiff, who lived in front of the place of the accident, testified that she had not seen the wire before, which creates the presumption that it had not been there for a long time, since if it had been it would have been seen by the neighbors.

As there is no evidence that the company had actual knowledge of the existence of said wire, and as it has not been proven that said wire had remained there for a sufficiently long period of time to create the presumption that if the defendant had complied with its duty to inspect its lines it would have discovered it before the accident, we cannot hold the company liable for the acts of a stranger which it could not foresee. *Graves* v. *Washington Water Power Co.*, 11 L.R.A. (N. S.) 452.

It is with great regret and only because we feel compelled to it by the consensus of the decisions in the United States, that we reverse the judgment appealed from and deny compensation to the plaintiff. If we held the appellant company liable in this case, we would invade a sphere of action forbidden to the judiciary; but that does not prevent us, and on the contrary, we deem it our duty to urge the competent board to require from the public service companies engaged in the electric power business to put into practice the only means of insulating electricity in an effective way, that is, by laying out its lines underneath the ground in the urban zone

of cities and towns as is the custom in the Continent. In that way the community could achieve the double purpose of avoiding the personal misfortunes which so frequently repeat themselves and improve the appearance of cities and towns, discarding that net of transmission wires for electrical current which raises itself as a constant threat over the heads of those who with equal right as said companies, make use of the streets and public places of the urban zone.

For the reasons set forth, the judgment appealed from must be reversed and another entered dismissing the complaint, with costs imposed on the plaintiff.

Mr. Justice Todd, Jr., took no part in the decision of this case.